UNITED STATES FIRE INSURANCE COMPANY, Relator,

v.

The Honorable Richard MILLARD, Judge of the 189th District Court of Harris County, Texas, Respondent.

No. 01–93–00066–CV.

Court of Appeals of Texas, Houston (1 Dist.).

Feb. 12, 1993.

Rehearing Denied Feb. 25, 1993.

Vance Christopher, Maureen McPherson, Houston, for relator.

John S. Powell, William Neumann, Jr., Houston, for respondent.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

## OPINION

HEDGES, Justice.

Relator, United States Fire Insurance Company (the defendant), petitions this Court to mandamus respondent, the Honorable Richard Millard, to vacate his order of January 11, 1993, denying the defendant's motion to sever and abate. This is the second time the defendant has petitioned this Court to issue a writ of mandamus against Judge Millard in this suit.[1]

The underlying lawsuit arises from a motor vehicle accident that occurred November 7, 1986, between Carthie O. Williams and Evelyn Williams (the plaintiffs) and Rhoyal Pickersgill, an uninsured motorist. The defendant was the plaintiffs' insurer and carried their uninsured motorist coverage. The plaintiffs' third amended original petition contains claims for breach of contract, breach of the duty of good faith and fair dealing, and violations of both the Insurance Code and the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA).

Both before and after the suit was filed, the defendant conducted settlement negotiations with the plaintiffs and made several settlement offers. Before the plaintiffs filed their lawsuit, the defendant offered

$5,000. After suit was filed, the defendant increased its offer to $12,500. The plaintiffs base their bad faith claims on the perceived inadequacy of the defendant's settlement offers.

Mandamus issues only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A relator who attacks the ruling of a trial court must establish, under the circumstances of the case, that the facts and the law permit the trial court to make but one decision. *Johnson*, 700 S.W.2d at 917; *Cronen v. Smith*, 812 S.W.2d 69, 71 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). When a trial judge exercising an otherwise discretionary authority has but one course to follow and one way to decide, the discretionary power is effectively destroyed. *Jones v. Strayhorn*, 321 S.W.2d 290, 295 (Tex.1959).

Rules 41 and 174(b) of the Texas Rules of Civil Procedure vest the trial court with broad discretion to sever and order separate trials of causes of action. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990); *Marshall v. Harris*, 764 S.W.2d 34, 35 (Tex. App.—Houston [1st Dist.] 1989, no writ). The trial court's discretion is not unlimited, however. *Womack v. Berry*, 291 S.W.2d 677, 683 (Tex.1956). The court must exercise "a sound and legal discretion within the limits created by the circumstances of the particular case." *Id.* The supreme court stated:

> When all the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby, there is no room for the exercise of discretion. *The rule then is peremptory in*

---

**1.** See *United States Fire Ins. Co. v. Millard*, 838 S.W.2d 935 (Tex.App.—Houston [1st Dist.] 1992, orig. proceeding) (where Judge Millard was ordered to vacate his order striking defendant's pleadings).

*operation and imposes upon the court a duty to order a separate trial. While the refusal to order a separate trial under such circumstances is usually termed a clear abuse of discretion, it is nevertheless a violation of a plain legal duty.*

*Id.* (emphasis added). To find an abuse of discretion, we must conclude that the facts and circumstances of this case extinguish any discretion in the matter. *Johnson,* 700 S.W.2d at 918; *Womack,* 291 S.W.2d at 683.

 For a severance to be proper, the following elements are necessary: (1) the controversy must involve more than one cause of action; (2) the severed cause of action must be one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed causes must not be so intertwined as to involve the same identical facts and issues. *Ryland Group, Inc. v. White,* 723 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1986, orig. proceeding) (trial court abused its discretion by dividing single causes of action into multiple claims). A severance is appropriate if a controversy involves two or more separate and distinct causes of action, each of which might constitute a complete lawsuit within itself. *Ryland,* 723 S.W.2d at 161; *see also State Farm Ins. Co. v. Wilborn,* 835 S.W.2d 260, 261 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding) A breach of an insurance contract claim is separate and distinct from bad faith, Insurance Code or DTPA causes of action. *See Wilborn,* 835 S.W.2d at 261; *Balderama v. Western Casualty Life Ins. Co.,* 794 S.W.2d 84, 89 (Tex.App.—San Antonio 1990), *rev'd on other grounds,* 825 S.W.2d 432 (Tex.1991). Uninsured motorist claims and bad faith claims have been recognized as separate and distinct causes of action which might each constitute a complete lawsuit within itself. *Wilborn,* 835 S.W.2d at 261.

 The defendant argues that when a plaintiff alleges both uninsured motorist and bad faith claims and there have been ongoing settlement negotiations and offers, severance is required. In support of this argument, the defendant urges that severance is proper because the plaintiffs' contract claim under their uninsured motorist policy is separate and distinct from their tort and statutory causes of action.

Evidence of settlement negotiations is generally inadmissible. Rule 408 provides in part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Tex.R.Civ.Evid. 408.

Thus, the defendant's offers of settlement and other evidence relating to the parties' negotiations would be inadmissible on the plaintiffs' uninsured motorist claim. Rule 408 does not, however, require exclusion of such evidence when it is offered for a purpose other than proof of liability or the amount of a claim. Tex.R.Civ.Evid. 408. The defendant's offers of settlement would be relevant to plaintiffs' bad faith, Insurance Code and DTPA claims.

The Fourteenth Court of Appeals recently addressed a situation virtually identical to the case before us. In *Wilborn,* the plaintiff sued the defendant insurance company to recover under the uninsured motorist provision of her insurance policy. She also sought to recover damages for alleged violations of the DTPA, the Insurance Code, and for breach of the duty of good faith and fair dealing. When the trial court judge denied the defendant insurance company's motion for separate trials and plea in abatement, the defendant sought a writ of mandamus requiring the judge to vacate the order. *Wilborn,* 835 S.W.2d at 261. The defendant argued, among other things, that if the causes of action were tried together, its offer of settlement could be admitted in evidence by the court and would prejudice the trial of the uninsured motorist claim.

The Fourteenth Court held that the case met the requirements for severance, because the causes of action represented two separate and distinct claims, each of which could constitute a lawsuit within itself. The court recognized an irreconcilable conflict between the respective parties' interests if severance were denied. Either a trial court refuses to admit evidence of settlement offers, thereby acknowledging defendant's right under Rule 408 to exclude such evidence but denying a plaintiff the right to use it to establish essential elements of a bad faith claim; or the trial court admits evidence of settlement offers, satisfying plaintiff's proof requirements but abrogating defendant's right to exclude such evidence. Faced with these competing interests, the court concluded:

> The resolution of this conflict leaves but one decision to protect all interests involved and that is to order severance of the two causes of action and to abate the proceedings on the bad faith claim until final disposition of the uninsured motorist claim.

*Id.* at 262.

We agree with the *Wilborn* decision and apply its reasoning to the case before us. We find that the plaintiffs' contractual and extra-contractual claims are separate and distinct and that each could constitute a discrete lawsuit. Severing these claims avoids problems inherent with settlement offer evidence and thus removes the possibility of prejudice to one or the other of the parties.

There is a second, and equally compelling, justification for severance in cases such as the one before us. The bad faith, Insurance Code, and DTPA Claims depend upon the outcome of the contractual cause of action. If in the uninsured motorist claim lawsuit, the defendant is found liable for damages in an amount equal to or less than its highest settlement offer, then the plaintiffs' other claims will be rendered moot. This result obtains because the extra-contractual claims are based on allegations of bad faith on the part of defendant in its investigation of the plaintiffs' claims and inadequacy of its settlement offers.

If, in the underlying case, the defendant prevails on liability, or if the finder of fact concludes that the plaintiffs' damages do not exceed the defendant's settlement offer, then defendant's conduct necessarily cannot have been in bad faith. It would be a waste of the court's, the jury's, the parties', and the attorneys' time to hear evidence on the bad faith claims when a finding in the contract lawsuit could be peremptorily dispositive. *See Great Nat'l Corp. v. Campbell*, 687 S.W.2d 450, 452 (Tex.App.—Dallas 1985, writ ref'd n.r.e.)

■ Abatement of the bad faith claims must necessarily accompany severance of those claims from the contract claim. Without abatement, the parties will be put to the effort and expense of conducting discovery and preparing for trial of claims that may be disposed of in a previous trial. In *Timon v. Dolan*, 244 S.W.2d 985, 987 (Tex.Civ.App.—San Antonio 1951, no writ), the court held, "A court, in exercise of its sound discretion, may abate an action for reasons of comity, convenience and orderly procedure, and in the exercise of that discretion may look to 'the practical results to be obtained, dictated by a consideration of the inherent interrelation of the subject matter of the two suits.'" *See Dolenz v. Continental Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex.1981). Enhancing judicial efficiency becomes particularly important in view of the burgeoning practice of routinely alleging bad faith in cases in which insurance is involved. *Cf. State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279 (Tex.App.—San Antonio 1992, n.w.h.) (bad faith counts now routinely pleaded in suits on insurance contracts).

We hold that the facts and circumstances of this case extinguished Judge Millard's discretion in this matter and that his refusal to grant separate trials and to abate the bad faith action was an abuse of discretion and a violation of a plain legal duty. *Womack*, 291 S.W.2d at 683.

In his order lifting abatement, Judge Millard said "the necessity for [a] separate trial to determine damages under Plaintiffs' uninsured motorist policy claim has been rendered moot and/or the finding of

the 334th Judicial District Court in Cause No. 88–53848 as to said damages is conclusive and bars subsequent relitigation of this issue." We disagree.

When the plaintiffs filed suit against Pickersgill, the uninsured motorist, they did so without the defendant's written consent. The insurance policy specifically provided, "Any judgment for damages arising out of a suit brought without our written consent is not binding on us." Such policy provisions are valid. *Criterion Ins. Co. v. Brown,* 469 S.W.2d 484, 485 (Tex. Civ.App.—Austin 1971, writ ref'd n.r.e.). An insured seeking the benefits of uninsured motorist insurance coverage has several options. The insured may sue the insurance company directly, without suing the uninsured motorist. If the insured obtains the written consent of the insurance company, he may sue the uninsured motorist alone; any judgment obtained would bind the insurance company. The insured may proceed against the uninsured motorist without the insurance carrier's consent, but any judgment obtained against the uninsured motorist will not be binding on the insurance carrier. Liability and damages will have to be relitigated against the insurance company. *Government Employees Ins. Co. v. Lichte,* 792 S.W.2d 546, 548 (Tex.App.—El Paso 1990, error denied); *Criterion,* 469 S.W.2d at 485. In the case before us, the plaintiffs chose the latter option; they sued Pickersgill without the defendant's written consent. Thus, the default judgment the plaintiffs obtained against Pickersgill does not bind the defendant. The fact that the defendant had notice of the plaintiffs' suit against Pickersgill is of no importance. An insurer's knowledge that a suit has been filed is not equivalent to "written consent" and will not bind an insurer to a judgment obtained in a suit brought against an uninsured motorist. *Id.*

The doctrine of collateral estoppel does not bar relitigation of liability and damages in this case. Collateral estoppel bars relitigation of an issue if (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior

action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984); *see also Wilhite v. Adams,* 640 S.W.2d 875, 876 (Tex.1982). For collateral estoppel to be invoked, it is only necessary that the party against whom the plea of collateral estoppel is asserted be a party or in privity with a party in the prior litigation. *Mower v. Boyer,* 811 S.W.2d 560, 563 (Tex.1991). Privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts. *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex. 1971). Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right. *Id.* The word "privity" includes those who control an action, although not parties to it; those whose interests are represented by a party to the action; and successors in interests. *Id.*

The defendant was not a party to plaintiffs' suit against Pickersgill and was not in privity with him. It could exercise no control over the suit. Its interests were not represented by Pickersgill, and it is not Pickersgill's successor in interest. *Dairyland County Mutual Ins. Co. v. Childress,* 650 S.W.2d 770, 774 (Tex.1983). Thus, collateral estoppel does not bar relitigation of the issues of liability and damages.

The plaintiffs have asserted that the defendant waived its right to abate discovery because of its alleged failure to timely respond to discovery requests. They contend that defendant's conduct amounts to "unclean hands" which preclude all equitable relief. Plaintiffs cite no authority to support their position. Their argument is without merit.

Similarly unpersuasive is the plaintiffs' contention that the defendant's request for relief should be barred by the doctrine of laches. Laches is an equitable plea and must conform to certain rules of pleading and proof. Two of the required

elements of laches are (1) unreasonable delay on the part of one party in asserting his legal or equitable rights, and (2) a good faith change to his detriment by the opposing party because of the delay. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex.1964).

The record shows that any delay in the defendant's filing its application for petition of writ of mandamus was not unreasonable but was rather occasioned by justifiable circumstances. Delay resulted from struggles by the defendant to reinstate its pleadings, numerous discovery disputes, and delay in rulings by the trial court. The defendant was granted severance and abatement on January 29, 1989, only to have the severance order withdrawn and abatement lifted on September 2, 1990. The defendant's renewed motion to abate was denied on April 9, 1991. Finally, after the *Wilborn* decision was issued, the defendant filed its motion to sever and abate on November 30, 1992, which the trial court denied on January 11, 1993. The motion for leave to file the mandamus action presently before this Court was filed on January 25, 1993. We hold that any delay that might be associated with this application is not unreasonable in the context of this case.

The plaintiffs argue that laches bars mandamus relief in this case as though the defendant should have foreseen the *Wilborn* decision. Prior to the *Wilborn* clarification, trial courts were understood to have discretion whether or not to sever and abate contract claims and bad faith claims. *See General Life & Accident Ins. Co. v. Handy*, 766 S.W.2d 370, 375 (Tex.App.—El Paso 1989, no writ); *Motors Ins. Corp. v. Fashing*, 747 S.W.2d 13, 14 (Tex.App.—El Paso 1988, orig. proceeding). In fact, before *Wilborn*, there was not a single Texas decision that held that: (1) a trial court has no discretion whether to sever and abate contract claims from bad faith claims upon proper motion; and (2) mandamus is a proper remedy if the trial court improperly refuses to sever and abate. The defendant diligently pursued its rights prior to *Wilborn*. Denial of mandamus relief based on laches would punish this defendant for not seeking mandamus before *Wilborn* was handed down, when it was clearly appropriate afterward.

■ A party who asserts laches must demonstrate the harm suffered by reason of his opponent's delay; mere showing of delay does not suffice. *Keown v. Meriwether*, 371 S.W.2d 56, 58 (Tex.Civ.App.—Beaumont 1963, writ ref'd n.r.e.); *see also Shearson Lehman Hutton, Inc. v. McKay*, 763 S.W.2d 934, 939 (Tex.App.—San Antonio 1989, no writ). The plaintiffs have failed to demonstrate any harm that they suffered because of the defendant's alleged delay in applying for petition of writ of mandamus. We hold that the defendant's request for relief is not barred by laches.

■ Having found that the trial court erred in denying the defendant's motion to sever and abate and the error amounted to a violation of a clear duty, we must determine whether the defendant has an adequate remedy by appeal. *Walker*, 827 S.W.2d at 840. We will not issue a writ of mandamus if there is a clear and adequate remedy by appeal. *Id.* Mandamus is intended as an extraordinary remedy, available only in limited circumstances. *Id.* Such interference is justified only when parties stand to lose their substantial rights. *Walker*, 827 S.W.2d at 842; *Iley v. Hughes*, 311 S.W.2d 648, 652 (Tex.1958).

We find that the defendant has a substantial right, in the trial of the plaintiffs' uninsured motorist claim, not to have the settlement offers and negotiations introduced into evidence. *See Wilborn*, 835 S.W.2d at 262 (jury instruction on how to consider evidence of a settlement offer would not prevent prejudice of the insurer's right not to have evidence of a settlement offer interpreted as an admission of liability). Furthermore, if the bad faith claims are tried with the uninsured motorist claim, the court, as well as the parties will have been put to the expense and the effort of preparing and trying bad faith claims that may be disposed of by the findings in the contract claim. Having found that severance and abatement offer the only protection to all interests involved,

we hold that there is no adequate remedy by appeal. The defendant is therefore entitled to relief by writ of mandamus compelling the respondent (1) to vacate its order of January 21, 1993, denying the defendant's motion to sever and abate; (2) to grant the defendant's motion to sever and abate; (3) to sever the plaintiffs' uninsured motorist claim from their bad faith claims; and (4) to abate all proceedings on the bad faith claims pending full and final resolution of the plaintiffs' uninsured motorist claim.

We are confident that Judge Millard will vacate his order of January 11, 1993, and will grant the defendant's motion to sever and abate. Our writ of mandamus will issue only in the event he fails to comply.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent. I do not believe relief by mandamus is appropriate in this case. United States Fire Insurance Company (the defendant) waited too late to challenge the trial court's order. A party cannot file a petition for mandamus four weeks before trial to challenge an order of the trial court made two and a half years earlier.

Below is a chronological list of some of the procedural events in this case:

### 1988

2–5–88 The plaintiffs filed suit against the defendant

10–14–88 The plaintiffs filed suit against Pickersgill, without the defendant's consent

5–18–88 The defendant filed a motion for separate trial on the uninsured motorist suit from the bad faith, DTPA, and Insurance Code claims (bad faith claims); and asked the court to abate the other causes of action

### 1989

1–27–89 The trial court granted the defendant's motion to sever the uninsured motorist claim from the bad faith claims, and the court abated the severed causes

### 1990

4–10–90 The plaintiffs obtained a default judgment against Pickersgill in the amount of $469,561.09

6–7–90 The plaintiffs filed a motion to lift the abatement and consolidate the uninsured motorist cause of action with the bad faith claims

8–2–90 The trial court granted the plaintiffs' motion to consolidate and found there was no need for separate trials because the finding of damages in the Pickersgill suit barred relitigation of the issue of damages

10–2–90 The plaintiffs' suit is dismissed for want of prosecution

12–10–90 Trial court granted the plaintiffs' motion to reinstate

### 1991

3–18–91 The defendant filed a motion abate the bad faith claims until after trial of the uninsured motorist claim

4–9–91 The trial court overruled the defendant's plea in abatement

### 1992

4–23–92 The trial court granted the plaintiffs' motion for sanctions and struck all the defendant's pleadings

5–19–92 The defendant filed a motion to vacate sanctions

7–30–92 The Fourteenth Court issued the *Wilborn* [1] case, granting mandamus to another trial court to grant severance in similar situation

8–5–92 The defendant filed a motion to reconsider the sanctions

8–10–92 Hearing on the defendant's motion to reconsider the sanctions

9–9–92 The defendant filed a petition for mandamus from the sanctions

10–8–92 This Court granted the writ of mandamus, and ordered the trial court to

---

**1.** *State Farm Mut. Automobile Ins. Co. v. Wilborn,* 835 S.W.2d 260, 261 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding).

vacate its order striking the defendant's pleadings

11–18–92 The defendant filed a motion to stay discovery

11–30–92 The defendant filed a motion to sever and abate the bad faith claims from the uninsured claims

### 1993

1–11–93 The trial court denied the defendant's motion to sever and abate

1–25–93 The defendant filed a motion for leave to file a mandamus to challenge the refusal to sever

I am persuaded by the plaintiffs' argument that the defendant's request for relief from this Court is barred by the doctrine of laches. The defendant filed this petition for mandamus on January 25, 1993, four weeks before trial. The trial court's order consolidating the cases, dated August 8, 1990, is now almost two and a half years old. I would hold the defendant unreasonably delayed filing this petition.

The appellate courts should not issue a writ of mandamus to one who is guilty of laches. *Callahan v. Giles*, 137 Tex. 571, 155 S.W.2d 793, 795 (1941); *Shield v. State*, 428 S.W.2d 684, 691 (Tex.Civ.App.—Austin 1968, writ ref'd n.r.e.). Even though a writ of mandamus is a common law writ, and not a remedy in equity, it is largely controlled by equitable principles. *Callahan*, 155 S.W.2d at 795. The maxim "equity aids the diligent and not those who slumber on their rights" is a fundamental principle of equity. *Id.* at 795–96.

In *Bailey v. Baker*, 696 S.W.2d 255, 258 (Tex.App.—Houston [14th Dist.] 1985, orig. proceeding), the Fourteenth Court of Appeals denied the defendant's motion for leave to file petition for writ of mandamus, because the defendant filed the petition two weeks before trial to challenge an order that was made four months before. The court noted that there was no explanation for the defendant's delay. The defen-

dant has not offered any reasonable explanation for the two and a half year delay in this case. *See Walker v. Packer*, 827 S.W.2d 833, 836 n. 1 (Tex.1992) (the supreme court recognized the issue of laches can bar a petition for mandamus, but did not reach the issue).

I disagree with the majority that the defendant should be excused from having filed this petition for mandamus because of the discovery disputes, the delay in rulings from the trial court, and the sanction order.[2] The issue here is not that the defendant was busy with other matters in the trial court. The issue is that the defendant did not timely file a motion for leave to file a mandamus *in this Court* to challenge the consolidation order.

I disagree with the majority that the defendant should be excused from having filed this petition for mandamus until the Fourteenth Court issued *Wilborn*. If the defendant had filed the mandamus timely, a similar decision might have been reached in this case before the *Wilborn* opinion. I also disagree with the majority that the defendant "diligently pursued its rights prior to *Wilborn*." The trial court ordered the cases consolidated on August 2, 1990, and *Wilborn* was issued on July, 30, 1992, one and one half years later.

Even if *Wilborn* is a correct statement of the law and the uninsured cause of action should be tried separately from the bad faith causes of action, this defendant waited too long to ask for separate trials by petition for writ of mandamus. We should not issue mandamus for the sole reason that we believe the trial court may have committed reversible error.

---

**2.** In the petition for mandamus the defendant filed to challenge the sanction order, the defendant could have asked also for relief from the order consolidating the cases.

I disagree with the majority that the trial court delayed its rulings. On this record, we know there were delays between some motions and rulings; we do not know who should be faulted for those delays.