NO. 07-03-0470-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JANUARY 24, 2005



______________________________



IN RE CAROL GAYLENE OSMOND, RELATOR


_______________________________






Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

MEMORANDUM OPINION


 By a Petition for Writ of Habeas Corpus, relator Carol Gaylene Osmond challenges
an order of contempt and her restraint pursuant thereto. We deny relief.

 This original proceeding arises from a dispute over whether William and Lynn Luster,
paternal grandparents, or Carol and Larry Osmond, maternal grandparents, will have
possession of Christyn Shanae Luster (the child). The child has been involved in, or the
subject of, three different suits affecting the parent child relationship (SAPCR) in the 100th
District Court of Carson County ("the Texas court"). She has also been the subject of two
proceedings in Oklahoma: one filed by the Osmonds in the District Court of McIntosh
County, Oklahoma ("the Oklahoma court"), wherein the Osmonds sought to be named
guardians for the child and sought an emergency order naming them temporary custodians
of the child, and a separate proceeding in the Oklahoma court in which the Lusters sought
registration of the Texas court's orders granting them custody of the child. 

 In initiating their Oklahoma suit via verified pleadings, the Osmonds (1) asserted that
the child was then, and had been for several months, living with them, and (2) disclosed
that they knew proceedings were pending in Texas by which the Lusters were seeking
custody of the child. (1) The Oklahoma court initially granted emergency custody to the
Osmonds, but subsequently determined that Texas had jurisdiction over the child and
dissolved its prior orders. In the separate proceeding wherein the Osmonds and the child's
parents were named, and appeared, as parties, the Oklahoma court directed registration
of Texas child custody orders as orders of the Oklahoma court, recognized the Lusters as
custodians of the child and authorized all law enforcement personnel to aid the Lusters in
securing possession of the child. 

 On August 14, 2003, after the Oklahoma court registered the Texas custody orders,
relator Carol Osmond traveled to Gray County, Texas, to attend a hearing in an SAPCR
involving two other grandchildren of the Osmonds, and in which the Osmonds had
intervened seeking managing conservatorship. (2) While in Texas, Carol was arrested
pursuant to a writ of commitment based on an order of the Texas court holding her in
contempt for failing to produce the child as ordered. The Texas court held a hearing at
which Carol and her counsel appeared. The court set bond for Carol and continued the
case to allow her to produce the child. Carol made bond. When she subsequently
appeared before the Texas court without the child, another order was entered finding her
in contempt. Specifically referencing the court's powers set out in article 11 of the Code
of Criminal Procedure, the order directed her commitment to the Carson County Jail until
such time as the child was produced.

 Carol filed a Petition for Writ of Habeas Corpus with this court. We granted
temporary relief directing that she be released from confinement upon posting bond. 

 Upon full consideration of relator's briefs, the issues presented, the law and the
record presented, we deny relief. We vacate our previous order granting temporary relief
and directing that relator be released from the Carson County jail upon posting bond. 

 Relator Carol Osmond is remanded to the custody of the Sheriff of Carson County,
to be held by him in accordance with the order of the Judge of the 100th District Court of
Carson County which was signed on October 7, 2003, subject to further orders of the 100th
District Court. See Tex. R. App. P. 52.8. 


 Per Curiam
1. 
 § 
 - 
2. 
 



 Pierce v. Reynolds, 160 Tex. 198, 329 S.W.2d 76, 78
(1959).

 Mandamus. Because Trinity's challenge to the order denying severance as to the
article 21.55 claim is addressed to an abuse of discretion vested in the trial court, Trinity
carries a heavy burden. To prevail Trinity "must establish, under the circumstances of the
case, that the facts and law permit the trial court to make but one decision." Johnson v.
Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985). In reviewing rulings within the
trial court's discretion, we may not substitute our judgment for that of the trial court. Id. at
918. Nor may we resolve factual disputes in mandamus proceedings. Brady v. Fourteenth
Court of Appeals, 795 S.W.2d 712, 714 (Tex. 1990). However, our review of the trial
court's determination of applicable law is less deferential because a trial court has no
discretion to determine what the law is or apply the law to the facts. Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992). Thus, a clear failure of the trial court to analyze or apply the
law correctly will constitute an abuse of discretion. 

 A writ of mandamus will issue only where there is no adequate remedy at law and
to correct "a clear abuse of discretion." (Emphasis added). Johnson, 700 S.W.2d at 918. 
The test for abuse of discretion is whether the trial court acted without reference to any
guiding rules and principles or whether the act was arbitrary and unreasonable. Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). The fact that a trial
judge may decide a matter within his discretion in a different manner than an appellate
judge in similar circumstances does not demonstrate that an abuse of discretion has
occurred. Id. 

Analysis


 We commence our analysis by focusing on Trinity's grounds for its motion for
severance and the coverage provision of the UIM endorsement. By its second motion for
severance and abatement, in summary, Trinity contended:

 First. The UIM claim should be severed from the extra-contractual claims
because evidence of settlement negotiations and insurance policy limits may
be relevant to the extra-contractual claims but is not admissible as to the
UIM claims.

 Second. Trinity should not be required to undergo the expense of discovery
as to the extra-contractual claims, when there is a substantial possibility that
the damages awarded in the contract claim will not exceed the limit of the
tortfeasor's policy, and thus will not even trigger the UIM endorsement,
which would preclude any necessity to discover or litigate the extra-contractual claims.


The coverage provision of the UIM endorsement in the policy provides: 

 We will pay damages which an insured is legally entitled to recover from the
owner or operator of an uninsured motor vehicle because of bodily injury
sustained by an insured, or property damage caused by an accident. The
owner's or operator's liability for these damages must arise out of the
ownership, maintenance or use of the uninsured motor vehicle.

 Any judgment for damages arising out of a suit brought without our written
consent is not binding on us. If we and you do not agree as to whether or
not a vehicle is actually uninsured, the burden of proof as to that issue shall
be on us. 


By their second amended petition by which Trinity was joined as a defendant, the
Brainards alleged that although they had made a claim for UIM benefits under the policy
before filing suit against Trinity, no benefits were paid under the policy. In addition to
contract damages, the Brainards also sought to recover interest and attorney's fees under
article 21.55, in addition to claims of good faith/unfair settlement practices. 

Severability of UIM and Article 21.55 Claims


 

 Although the Brainards do not challenge Trinity's statement that it made an offer to
settle the UIM claim, they contend severance was not proper under Lusk v. Puryear, 896
S.W.2d 377 (Tex.App.--Amarillo 1995, orig. proceeding). From the limited record, it
appears that the trial court based its decision to deny the severance of the UIM prompt
payment on our decision in Lusk; however, Lusk is not controlling because of the
provisions of the UIM endorsement, the recent decision in Allstate Ins. Co. v. Bonner, 51
S.W.3d 289 (Tex. 2001), and other reasons discussed below. 

 Lusk did not involve a claim for UIM benefits. In Lusk, we held that a cross-action
against an insurer for breach of contract and for statutory damages for failure to promptly
pay personal injury protection benefits constituted one cause of action and that a
severance of the claims was improper. 896 S.W.2d at 380. However, unlike personal
injury protection benefit coverage, the provisions of the UIM endorsement condition
payment of benefits upon a determination of liability of the UIM motorist and damages. In
Henson v. Texas Farm Bureau Mut. Ins. Co, 989 S.W.2d 837, 839-40 (Tex.App.--Amarillo
1999), aff'd, 17 S.W.3d 652 (Tex. 2000), we denied an award of prejudgment interest
because the condition precedent provision in the contract for payment of the UIM claim
remained to be determined when the UIM claim was presented. The Brainards' claim for
UIM benefits is contractual in nature. See Henson, 17 S.W.3d at 653-54; see also U.S.
Fire Ins. Co v. Millard, 847 S.W.2d 668, 672-73 (Tex.App.--Houston [1st Dist.]1993, orig.
proceeding) (holding that a breach of insurance contract claim is separate and distinct
from bad faith, Insurance Code, or DTPA claims, and

 [u]ninsured motorist claims and bad faith claims have been recognized as
separate and distinct causes of action which might each constitute a
complete lawsuit within itself.


Citing State Farm Ins. Co. v. Wilborn, 835 S.W.2d 260, 261 (Tex.App.--Houston [14th Dist.]
1992, orig. proceeding). In Bonner, 51 S.W.3d at 291-92, which involved a prompt
payment claim under UIM endorsement, the Court held that in order to establish a UIM
claim under the policy, the claimant must prove not only that the UIM driver negligently
caused the accident that resulted in the covered damages, but also that all applicable
policy provisions were satisfied. The Court also denied an award of attorney's fees under
section 6 of article 21.55. Also, in State Farm Mut. Auto Ins. Co. v. Grayson, 983 S.W.2d
769, 770 (Tex.App.--San Antonio 1998, no pet.), cited with approval in Bonner, 51 S.W.3d
at 292, the court stated the rules that a claimant must (1) establish the negligence of the
UIM operator and the amount of claimant's damages, and (2) that the operator was in fact
uninsured.

 State Farm Ins. Co. v. Wilborn, 835 S.W.2d 260 (Tex.App.--Houston [14th Dist.]
1992, orig. proceeding) and U.S. Fire Ins. Co. v. Millard, 847 S.W.2d 668 (Tex.App.--Houston [1st Dist.] 1993, orig. proceeding) recognize that because uninsured motorist
claims and bad faith claims are separate and distinct causes of action and each may
constitute a complete lawsuit, severance of the claims and abatement of the bad faith
claims is appropriate because of the irreconcilable conflict between the respective parties'
interests if severance is denied. Further, in Millard, 847 S.W.2d at 673, in its discussion
of abatement the court recognized that judicial efficiency may be enhanced by severance
and abatement because litigation of the extra-contractual claims may never be required
because of the results of the contract litigation, which is addressed in Trinity's second
ground. (3) Because (1) the claim for UIM benefits is contractual and the claim for penalty
under article 21.55 controversy involves more than one cause of action, (2) the severed
claim is one that would be the proper subject of a lawsuit if independently asserted, and
(3) the article 21.55 claim is not so interwoven with the tort action and contract action that
they involve the same facts and issues, the claim for damages under article 21.55 was
severable. 

Mandamus



 Having determined that the article 21.55 claim was severable, we must now 
determine whether a writ of mandamus is appropriate, which requires that we find that (1)
the trial court abused its discretion, and (2) that Trinity has no adequate remedy at law. 
Regarding the abuse of discretion finding, our analysis above demonstrates that it is clear
that a UIM claim does not mature until the claimant establishes that the negligence of the
UIM motorist (1) caused the accident and the amount of damages, (2) the motorist was in 
fact underinsured, and (3) severance of the article 21.55 claim as it relates to the UIM
claim is appropriate, and the trial court abused its discretion in denying the severance of
the article 21.55 claim. 

 Regarding the adequate remedy at law factor, Trinity contends that it has none and
that mandamus is necessary because of the unacceptable dilemma presented if it is forced
to try both the fundamental issues of liability in conjunction with claims addressing its
evaluation of liability. Wilborn, 835 S.W.2d at 262. As in Millard, 847 S.W.2d at 675-76,
we conclude that Trinity has a substantial right to the exclusion from evidence of its
settlement offers and negotiations in the trial of the UIM claim. Also, severance is favored
for reasons of judicial economy and to avoid the potential of unnecessary expense to the
parties for similar reasons. Id. We conclude that Trinity does not have an adequate
remedy at law.

 Laches and Motion for Sanctions


 We have not overlooked the Brainards' defense of laches and motion for sanctions.
Contending that Trinity knew or should have known that the trial court intended to deny
severance of the article 21.55 claim since at least August 8, 2001, the Brainards assert
that laches bars mandamus and that Trinity should be sanctioned because the mandamus
proceeding was merely brought for delay. We disagree. Even if counsel for Trinity were
aware in early August that the trial court had decided to deny the severance as to the
article 21.55 claim, the trial court did not sign its order granting the motion as to some
claims and denying the severance as to the article 21.55 claim until September 14, 2001. 
Because the petition for mandamus was filed on September 17, 2001, laches does not
apply and the Brainards' motion for sanctions is denied.

 Concluding that the trial court abused its discretion in denying severance of the
article 21.55 claim as related to the Brainards' UIM claim, and finding that Trinity has no
adequate remedy at law, we conditionally grant the petition for writ of mandamus. We are
confident the trial court will now grant the motion to sever the article 21.55 claim from the
contract claim in accordance with this opinion. We instruct the Clerk to issue the writ only
if the trial court fails to grant the motion within thirty days.

 

 Don H. Reavis

 Justice

 

Publish. 
1. Real Parties in interest include Lilith Brainard, Sally Brainard Wicker, E. Swasey
F. Brainard, II, Amy Brainard, Berklee Brainard Clements, Sena Brainard and the Estate
of Edward H. Brainard, II, collectively referred to as the Brainards.
2. The order of dismissal as to Premier and its operator did not dismiss the Brainards'
claims against Trinity.
3. Severance of the article 21.55 claim will not require additional litigation because
the trial court did order a severance of the bad faith and article 21.21 claims.