**Opinion issued March 17, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00821-CV

_____

## IN RE STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

Relator, State Farm Mutual Automobile Insurance Company, seeks mandamus relief in connection with the trial court's refusal to abate extra-contractual claims brought by the plaintiff in her suit to seek

uninsured/underinsured motorist ("UIM") benefits. We conditionally grant the petition for writ of mandamus.[1]

## Background

Real party in interest, Amanda Marie Sanchez Garza, was involved in an automobile accident with Ofelia Castillo-Lara. Garza alleges she was injured in the accident, that Castillo-Lara caused the accident, and that Castillo-Lara is uninsured. Garza made a claim for UIM benefits on her State Farm automobile insurance policy. *Id.* The parties disagree as to whether State Farm made an offer to Garza to settle the claim.[2] Garza sued State Farm seeking a declaratory judgment that she is entitled to UIM benefits. She also asserted claims for breach of the duty of good faith and fair dealing, for violations of chapters 541 and 542 of the Texas Insurance Code, and for violations of the Texas Deceptive Trade Practices-Consumer Protection Act, TEX. BUS. & COM. CODE § 17.50(a)(4) ("DTPA").[3]

---

[1] The underlying case is *Amanda Marie Sanchez Garza v. State Farm Mut. Auto. Ins. Co.*, cause number 2019-26133, pending in the 113th District Court of Harris County, Texas, the Honorable Rabeea Sultan Collier presiding. Certain of the claims in the underlying case have been severed into cause number 2019-26133-A.

[2] State Farm says in its petition for mandamus relief that it made a settlement offer to Garza "to attempt to resolve the claim." In her response, Garza contends State Farm "stated that it would provide coverage for the claim" but "failed to evaluate Garza's claim, make her an offer, deny the claim or respond" to the claim.

[3] Garza's claims for breach of the duty of good faith and fair dealing, for violations of chapters 541 and 542 of the Texas Insurance Code, and for violations of the Texas Deceptive Trade Practices-Consumer Protection Act, TEX. BUS. & COM. CODE § 17.50(a)(4) are referred to collectively as "the extra-contractual claims."

2

State Farm filed an opposed motion for severance and abatement of Garza's extra-contractual claims. In its motion, State Farm asserted that severance was required because Garza had not established her entitlement to UIM benefits; that severance was mandatory because State Farm had made an offer to settle the entire claim; and that abatement was warranted in order to prevent State Farm from "having to conduct discovery and prepare for trial on claims which are not ripe until the jury has determined whether UIM benefits are owed." The trial court granted State Farm's motion in part, severing the extra-contractual claims but refusing to abate them. State Farm filed a motion for reconsideration, which the trial court denied.

In its petition for mandamus relief, State Farm asserts the trial court abused its discretion in refusing to abate the extra-contractual claims until such time as the declaratory action has been adjudicated. Garza asserts that because her statutory claims stem from State Farm's failure to respond to the claim – as opposed to its failure to *satisfactorily* respond to the claim – no such adjudication is required in order for her extra-contractual claims to be ripe and, therefore, abatement was not warranted.

**Standard of Review**

Mandamus will issue to correct a clear abuse of discretion for which there is no adequate remedy by appeal. *See In re Prudential Ins. Co.*, 148 S.W.3d 124,

3

135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding); *see also Patton Boggs LLP v. Moseley*, 394 S.W.3d 565, 569 (Tex. App.—Dallas 2011, no pet.). A trial court abuses its discretion "if 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law' or if it clearly fails to correctly analyze or apply the law." *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (citations omitted). A trial court lacks discretion to determine "what the law is or in applying the law to the facts." *Prudential Ins.*, 148 S.W.3d at 135. Therefore, a "clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *In re Liberty Ins. Corp.*, 496 S.W.3d 229, 232 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) (citing *In re Allstate Cty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding)). Texas courts have held an order denying a motion to abate extra-contractual claims from claims seeking UM/UIM benefits may be set aside by mandamus. *See e.g.*, *In re Colonial Cty. Mut. Ins. Co.*, No. 01-19-00391-CV, 2019 WL 5699735, at *2 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, orig. proceeding); *In re Am. Nat. Cty. Mut. Ins. Co.*, 384 S.W.3d 429, 439 (Tex. App.—Austin 2012, orig. proceeding).

### Declaratory Action for UIM Benefits

UIM benefits are available to an insured after the insured shows (1) his auto policy includes UIM coverage; (2) an uninsured or underinsured motorist's

negligence caused the accident that resulted in covered damages; (3) the amount of the insured's damages; and (4) the insurance coverage available from the uninsured/underinsured motorist's insurance coverage is deficient. *Colonial Cty.,* 2019 WL 5699735, at *2 (citing *In re Liberty Cty. Mut. Ins. Co.*, 537 S.W.3d 214, 220 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding)). The Texas Insurance Code requires UIM coverage to

> provide for payment to the insured of all amounts that the insured *is legally entitled to recover* as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

TEX. INS. CODE § 1952.106 (emphasis added).

The UIM policy "is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party." *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006). Whereas the insurance policy itself dictates coverage in most first-party insurance contracts, tort law determines coverage in a UIM policy. *Id.* Tort law is implicated because, given the Insurance Code's requirement that UIM policies pay benefits only for what an insured is "legally entitled to recover," an adjudication of the tortfeasor's liability and the amount of the insured's damages is a prerequisite to the policyholder's recovery of UIM benefits. *Id.* at 815 (citing *Henson v. Southern Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 653 (Tex. 2000)). Therefore, "the

UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist." *Brainard*, 216 S.W.3d at 818.

Rather than asserting a breach of contract claim to obtain UIM benefits, Garza seeks declaratory relief as to her right to UIM benefits. The Uniform Declaratory Judgments Act "creates an appropriate claim under which an insured may obtain the legal determination required to recover under his UM/UIM policy." *Allstate Ins. Co. v. Irwin*, No. 04-18-00293-CV, 2019 WL 3937281, at \*4 (Tex. App.—San Antonio Aug. 21, 2019, pet. filed); *see also Allstate Ins. Co. v. Jordan*, 503 S.W.3d 450, 456 (Tex. App.—Texarkana 2016, no pet.) ("[A] declaratory judgment is an appropriate method of establishing the prerequisites to recovery in a UIM benefits case."). Garza seeks damages for past and future medical expenses, past and future pain and suffering, past and future mental anguish, and past and future physical impairment/incapacity.[4] Given that the declaratory action remains pending, there has been no adjudication of Castillo-Lara's liability or of the amount of Garza's damages, if any, in connection with her UIM claim. Therefore, the amount, if any, that Garza is "legally entitled to

---

[4]  Garza also seeks punitive damages, which typically cannot not be recovered on UIM policies. *See, e.g., Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 813 (Tex. 2006) (citing cases).

recover" has not been determined and State Farm is under no obligation to pay UIM benefits at this time. *Brainard*, 216 S.W.3d at 818; *Colonial Cty.*, 2019 WL 5699735, at *2; *Liberty Cty.*, 537 S.W.3d at 220.

### Extra-contractual Claims

Garza's extra-contractual claims comprise breach of the duty of good faith and fair dealing and alleged violations of the Texas Insurance Code and the DTPA. She asserts in her extra-contractual claims, *inter alia*, that State Farm made misrepresentations in connection with the UIM policy, failed to acknowledge her claim, failed to provide a reasonable explanation for denying her claim, failed to reasonably and promptly investigate her claim, and failed to promptly attempt to settle or pay the claim.

Garza's declaratory action for benefits is discrete from the extra-contractual claims that pertain to State Farm's handling of her claim. "A breach of an insurance contract claim is separate and distinct from bad faith, Insurance Code or DTPA causes of action. Uninsured motorist claims and bad faith claims have been recognized as separate and distinct causes of action which might each constitute a complete lawsuit within itself." *United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 672 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding) (citations omitted). It is well-settled that extra-contractual claims made by a UIM policyholder hinge on the policyholder's entitlement to UIM benefits. "An insured

must first establish that the insurer is liable on the contract before the insured can recover on extra-contractual causes of action against an insurer for failing to pay or settle a UIM insurance claim." *Colonial Cty.*, 2019 WL 5699735, at *2 (citing *Liberty Cty.*, 537 S.W.3d at 220); *see also In re Allstate Cty. Mut. Ins. Co.,* 447 S.W.3d 497, 501 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) ("[A]n insured generally must first establish that the insurer is liable on the contract before the insured can recover on extra-contractual causes of action against an insurer for failing to promptly pay, failing to settle, or failing to investigate an underinsured motorist insurance claim.") (citing cases).

This Court, like other Texas courts of appeal, has required extra-contractual claims to be severed and abated until the entitlement to UIM benefits has been determined. Indeed, this Court recently issued mandamus relief in such a case. In *Colonial County*, the plaintiff sued her insurer, asserting it did not pay UIM benefits as required by her policy after a motor vehicle accident. 2019 WL 5699735, at *1.[5] She asserted claims for breach of contract and extra-contractual claims for breach of the common-law duty of good faith and fair dealing, Texas

---

[5]    In *In re Colonial Cty. Mut. Ins. Co.*, the plaintiff asserted the insurer "failed to attempt to effectuate a prompt, fair and equitable settlement of a claim," "failed to adopt and implement reasonable standards for prompt investigation of claims arising under its policies," and "refused to pay a claim without conducting a reasonable investigation with respect to the claim." No. 01-19-00391-CV, 2019 WL 5699735, at *4 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, orig. proceeding).

Insurance Code violations and DTPA violations. *Id.* The insurer filed a motion to sever and abate the extra-contractual claims from the underlying UIM claim. *Id.* The trial judge severed the extra-contractual claims but only abated discovery as to the bad faith claim. *Id.* The insurer sought mandamus relief. *Id.*

This Court explained that "[a]n insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *Id.* at *2 (quoting *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018)). Further, this Court held an insured cannot recover on extra-contractual causes of action for failure to pay or settle a UIM claim before establishing the insurer is liable on the insurance contract. *Colonial Cty.*, 2019 WL 5699735, at *2. "Thus, our Court and others have required extra-contractual claims to be severed and abated until the UIM breach of contract claim is determined." *Id.* (citing *Liberty Cty.*, 537 S.W.3d at 220; *Allstate Cty.*, 447 S.W.3d at 504; *In re Progressive Cty. Mut. Ins. Co.*, 439 S.W.3d 422, 428 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding)).

In granting the insurer's mandamus relief in *Colonial County*, this Court said the plaintiff's extra-contractual claims were "predicated upon the denial of UIM benefits" and, therefore, the plaintiff could not recover on the statutory extra-contractual claims for denial of the UIM benefits "unless she first demonstrates

that she has a right to those benefits under the policy." 2019 WL 5699735, at *4. The court said,

> [T]he severed extra-contractual claims are not yet ripe and could be rendered moot by the underlying liability determination in the breach of contract case. The trial court was, therefore, required to abate the Statutory Extra-contractual Claims asserted against Colonial and abused its discretion by denying abatement of the claims.

*Id.*

Garza does not address *Colonial County* in her response to State Farm's petition.[6] She asserts, however, that her Insurance Code claims is not dependent on the determination of her entitlement to UIM benefits and, therefore, the trial court properly refused to abate those claims. Garza distinguishes the cases relied on by State Farm, which "involve actions taken by an insurer *after* they properly responded to a claim, although the insurer may have subsequently failed to pay or settle the claim" from cases in which the insurer did not "properly respond" to the claim, which she asserts was the case here (but which State Farm disputes). However, Garza does not cite any cases that make that distinction and we have not found any. Regardless, that is a distinction without a difference. The supreme court

---

[6]     State Farm filed a letter with the Court two days after *Colonial County* was issued, quoting the opinion and noting that the legal principles are the same. The plaintiff's allegations in *Colonial County* include claims that the insurer "failed to attempt to effectuate a prompt, fair and equitable settlement of a claim" and "failed to adopt and implement reasonable standards for prompt investigation of claims arising under its policies." 2019 WL 5699735, at *4. The allegations of Insurance Code violations in *Colonial County* closely track – and in some cases, use virtually the same language as – some claims asserted by Garza.

has recognized that "the Insurance Code offers procedural protections against misconduct likely to lead to an improper denial of benefits *and little else*." *Menchaca*, 545 S.W.3d at 500 (emphasis added).

In *Colonial County*, we noted the "general rule that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy." *Colonial Cty.*, 2019 WL 5699735, at *3 (citing *Menchaca*, 545 S.W.3d at 495). However, "regardless of whether an insured is entitled to benefits under a policy, this general rule does not preclude the possibility of an insured recovering damages for a statutory violation that causes an injury independent from the loss of the benefits. . . ." *Colonial Cty.*, 2019 WL 5699735, at *3 (citing *Menchaca*, 545 S.W.3d at 495). We explained:

> This "independent-injury rule" applies only if damages are truly independent of the insured's right to receive policy benefits. It does not apply if the insured's statutory or extra-contractual claims "are predicated on [the loss] being covered under the insurance policy" or if the damages "flow" or "stem" from the denial of the claim for policy benefits. When an insured seeks to recover damages that "are predicated on," "flow from," or "stem from" policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits.

*Colonial Cty.*, 2019 WL 5699735, at *3 (citations omitted). Garza concedes in her response that her statutory claims "are not premised on an independent-injury theory . . . In this case, Garza was covered under the policy, so the independent-injury rule does not apply."

11

To the extent Garza relies on *Menchaca*, she is mistaken. The supreme court in *Menchaca* was asked "whether the insured can recover policy benefits based on the insurer's violation of the Texas Insurance Code even though the jury failed to find that the insurer failed to comply with its obligations under the policy." 545 S.W.3d at 484. In *Colonial County*, this Court noted *Menchaca* "did not involve a UIM claim or whether contractual and extra-contractual claims should be severed and abated. Instead, it involved a first-party claim by the insured against her insurer for storm damage to the insured's claim." *Colonial Cty.*, 2019 WL 5699735, at *3 (citing *Menchaca,* 545 S.W.3d at 484). We stated, "even assuming, arguendo, that *Menchaca* applies to UIM claims, the decision does not support the trial court's denying abatement of the Statutory Extra-contractual Claims . . . the [*Menchaca*] Court 'clarif[ied] and affirm[ed] the general rule that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy.'" 2019 WL 5699735, at *3 (quoting *Menchaca*, 545 S.W.3d at 495).[7, 8]

---

[7]    Garza relies in her response to State Farm's petition on cases that pre-date *Brainard* and that do not address UIM policies, the analyses of which are unique from other types of policies. *See, e.g., Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627 (Tex. 1996) (homeowner's policy); *Viles v. Sec. Nat. Ins. Co.*, 788 S.W.2d 566 (Tex. 1990) (homeowner's policy); *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex. 1994) (worker's compensation policy); *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597 (Tex. 1993) (homeowner's policy).

[8]    Garza relies on several cases that support State Farm's position. *See*, *e.g., Accardo v. Am. First Lloyds Ins. Co.*, CIV.A. H-11-0008, 2013 WL 4829252, at *1 (S.D.

12

Garza relies on an opinion we issued in 2014 in support of her position that her misrepresentation claims should not be abated. Our opinion in that case, *Allstate County*, is inapposite. Like Garza, the plaintiffs in *Allstate County* brought a declaratory action against their insurer for a determination of coverage under a UIM policy. 447 S.W.3d at 498. The plaintiffs also asserted claims against Allstate for breach of contract, for acting in bad faith by failing to settle or to attempt to settle the claim, and for violating sections 541.060(a)(2) and 541.060(a)(7) of the Insurance Code by failing to attempt in good faith to settle the claim and by refusing to properly investigate, evaluate and pay the claim. *Id.* at 498-99.

Tex. Sept. 10, 2013) (noting extra-contractual bad faith claim was abated until tortfeasor's liability and plaintiffs' damages were established); *State Farm Mut. Auto. Ass'n v. Cook*, No. 04-18-00729-CV, 2019 WL 4453763, at *1, 5 (Tex. App.—San Antonio Sept. 18, 2019, no pet.) (stating in case where extra-contractual claims "were severed and abated pending a judgment establishing [insured's] entitlement" to UIM benefits, "[o]nce a legal proceeding establishes that the insured is entitled to UM/UIM coverage *and resolves the damages amounts*, the bad-faith claim is ripe for consideration.") (quoting *Accardo*, 2013 WL 4829252, at *5) (emphasis added); *Woods v. Argonaut Midwest Ins. Co.*, No. 6:15-CV-139, 2016 WL 3653518, at *2 (E.D. Tex. Mar. 18, 2016) (dismissing claims for breach of contract, violations of the Insurance Code, fraud and negligent misrepresentation as premature, given that tortfeasor's liability had yet to be established, and abating claims for bad faith and DTPA violations pending adjudication of tortfeasor's liability); *In re Allstate Prop. & Cas. Ins. Co.*, No. 14-12-00867-CV, 2012 WL 5987580, at *2 (Tex. App.—Houston [14th Dist.] Nov. 29, 2012, orig. proceeding) (holding trial court abused its discretion denying motion to sever and abate extra-contractual claims, stating, "The supreme court has determined . . . that until the insured prevails in his [UIM] contractual claim he cannot require the insurance company to defend the bad faith claim.") (citation omitted); *In re Am. Nat. County Mut. Ins. Co.*, 384 S.W.3d 429, 439 (Tex. App.—Austin 2012, orig. proceeding) (holding trial court abused its discretion denying motion to sever and abate extra-contractual claims from UIM contractual claims).

However, the plaintiffs also asserted misrepresentation claims jointly against Allstate, Insurance Network of Texas, Eddie Croix Insurance Agency, Inc., and adjuster Randy Croix, all of whom allegedly (1) "were involved in the sale and servicing of the [UIM] policy," and (2) violated the Insurance Code and the DTPA by representing the plaintiffs were covered under the policy when they were not.[9] *Id.* at 499. Allstate filed a motion to sever and abate the extra-contractual and misrepresentation claims until the contract claims were decided, but the trial court denied the motion. *Id.*

Allstate sought mandamus relief to compel severance and abatement of the extra-contractual claims. *Id.* This Court granted relief as to the claims brought solely against Allstate. *Id.* at 501. We held that those claims, in which the plaintiffs alleged Allstate "acted in bad faith by failing to settle their contractual claim, that Allstate failed to make a good faith settlement offer, and that Allstate failed to properly investigate their contractual claim," required severance because they "would be negated by a determination that they lacked coverage under the insurance contract, requiring Allstate to prepare for and litigate the settlement claims, which may have not yet accrued and may be rendered moot . . . ." *Id.* at

---

[9] The misrepresentation claims were asserted in the alternative to the extra-contractual claims asserted against Allstate, in the event the fact finder found the plaintiffs did not have coverage under the policy's UIM provision. *In re Allstate Cty. Mut. Ins. Co.*, 447 S.W.3d 497, 499 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding).

14

502.[10] However, we held the trial court did not abuse its discretion denying the motion to sever the misrepresentation claims. *Id.* at 504.

*Allstate County* is distinguishable for several reasons. First, *Allstate County* involved a dispute as to whether there was an effective UIM policy, not whether the policyholder was entitled to benefits on an existing UIM policy, which is the case here. Second, this Court's holding that the misrepresentation claims need not be abated was fact driven. The misrepresentation claims were asserted jointly against Allstate, Insurance Network of Texas, the insurance agency and the insurance agent. *Id.* at 499, 503. In our opinion, we noted that if Allstate was liable for the misrepresentation claims, the liability would be based on the agent's conduct. *Id.* at 503. We further noted the other defendants did not file similar motions to sever and abate and that Allstate did not seek severance of the claims asserted against it from the claims asserted against the other defendants. *Id.* "As a result, [plaintiffs'] misrepresentation claims against Allstate involve the same facts

---

[10] We noted in *Allstate County* that the plaintiffs' discovery requests included requests for "production of all documents related to lawsuits and claims against Allstate regarding the denial of claims under business automobile policies." 447 S.W.3d at 502 n.3 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). We said, "Allowing [plaintiffs] to conduct broad discovery into Allstate's claims handling history regarding unrelated accidents and then allowing the introduction of such information at the trial of [plaintiffs'] breach of contract claim would be manifestly unjust." *Id.* at 502. Some of Garza's discovery requests to State Farm about its claims history could, similarly, have the same prejudicial result during the trial on the UIM claims and may be rendered moot, depending on the determination of the declaratory action.

15

and issues as, and are interwoven with, the misrepresentation claims against Insurance Network of Texas, Eddie Croix Insurance Agency, Inc., and [agent] Randy Croix, which claims would remain pending in the underlying lawsuit regardless of any severance of these claims against Allstate." *Id.* Third, the misrepresentation claims in *Allstate County* were not bad faith claims. *Id.* On the contrary, they involved the determination of whether the plaintiffs had procured UIM insurance. *Id.*

Our opinion is bolstered by Garza's failure to identify specific misrepresentations in her pleadings, which only quote statutory language and provide generalities as to the purported misrepresentations. "[T]o to bring an actionable claim for an alleged misrepresentation by an insurer, the plaintiff must identify the specific misrepresentation the insurer made." *Ramirez v. GEICO*, 548 S.W.3d 761, 772 (Tex. App.—El Paso 2018, pet. denied) (granting insurer's summary judgment motion on DTPA claims about alleged misrepresentations about the policy and its benefits because insured "did not point to any specific misrepresentations Geico made, did not indicate when and/or where the alleged misrepresentations were made, and did not indicate who made them. More importantly, he presented no evidence that any misrepresentation occurred.").

Finally, we note that although Garza asserts a declaratory judgment claim rather than a breach-of-contract claim to determine her entitlement to UIM

benefits, the reasoning in *Colonial County* and in the other cases involving UIM benefits and extra-contractual claims is applicable here. Given that Garza's extra-contractual claims may be rendered moot depending on the adjudication of her declaratory action, State Farm should not be required to litigate them or answer discovery about other claims before the declaratory action is resolved. Therefore, we conclude that the trial court should have abated Garza's extra-contractual claims and abused its discretion in declining to do so.

### No adequate remedy by appeal

If mandamus does not issue and State Farm is forced to engage in discovery regarding the extra-contractual claims, it will lose its substantial right to avoid the time and expense of discovery for claims that are not ripe and may ultimately be rendered moot. In that event, it will have no adequate remedy by appeal. *See*, *e.g.*, *Colonial Cty.*, 2019 WL 5699735, at *5 (stating UIM insurer lacked adequate remedy by appeal because "if mandamus is not granted it stands to lose substantial rights by being required to engage in discovery and prepare for claims that may be rendered moot and may have not even yet accrued."); *In re United Fire Lloyds*, 327 S.W.3d 250, 256 (Tex. App.—San Antonio 2010, orig. proceeding) (same).

Garza's discovery requests support our conclusion that the trial court should have abated discovery as to the extra-contractual claims. Her original petition included requests for disclosures, seventy requests for admissions, twenty-two

interrogatories and 109 requests for production. Of those, numerous requests and interrogatories have no bearing on the declaratory action. For example, Garza's requests for production include requests for claims-denied journals and "similar documents," not limited to UIM claims, for the past five years; for all complaints made to the Texas Department of Insurance in the past five years, not limited to UIM claims; for claims and underwriting files for all UIM claims denied in the past five years; for complaint letters involving UIM policies from the past five years; for petitions and judgments from lawsuits involving State Farm in the past five years where Insurance Code and other statutory and common-law infractions were alleged in connection with *any type* of State Farm insurance policy; for the "entire file" of the agent who sold the policy to Garza; all documents regarding reserves set with regard to Garza's claim; all documents regarding State Farm's organizational structure; all materials used in the training of State Farm's agents who sell policies and claims-handling personnel; all advertisements used or approved regarding automobile insurance; employment agreements between State Farm and any adjuster who worked on Garza's UIM claim; and documents reflecting investigations, reviews, remedial or disciplinary actions in the past five years taken against any State Farm employee or agent who evaluated, adjusted or handled Garza's UIM claim. Garza's interrogatories request identifying information about all UIM claims and lawsuits involving State Farm from the past

18

five years; about anyone who in the last five years has submitted any type of complaint, "legal or otherwise," relating to UIM claims; and about anyone who trained any adjuster or investigator who "evaluated, adjusted and/or handled Plaintiff's claims." Several of Garza's requests for admissions also pertained only to the extra-contractual claims.

This Court has held that requests for production of insurer manuals, instruction booklets, protocols, and other documents about the general investigation and handling of UIM claims, as well as for documents about claims and lawsuits filed against the insurer "as the result of nonpayment of [UIM] claims in Texas, regardless of whether . . . liability was denied" are irrelevant to UIM contract claims. *See*, *e.g.*, *Progressive Cty.*, 439 S.W.3d at 427 ("[T]he introduction of Progressive's claims handling history in unrelated accidents at the time of [the plaintiff's UIM] breach-of-contract claim would be manifestly unjust."). More recently, we held that "[i]surers have a substantial right not to undergo the expense of litigating and conducting discovery on issues that ultimately may be unnecessary because of the result in the underlying tort case." *Colonial Cty.*, 2019 WL 5699735, at *5. For these reasons, State Farm has no adequate remedy by appeal if discovery is not abated as to Garza's extra-contractual claims.

## Conclusion

Accordingly, we conditionally grant mandamus relief, directing the trial court to: vacate that portion of its June 21, 2019 order that denies abatement; to abate the extra-contractual claims that were severed into Cause No. 2019-26133-A until such time as the claims in Cause No. 2019-26133 are resolved; and for further proceedings consistent with this opinion. The writ will issue only if the trial court fails to comply.

                                                     Russell Lloyd
                                                     Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.