**Opinion issued October 5, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00363-CV

———————————

## IN RE LIBERTY COUNTY MUTUAL INSURANCE COMPANY, Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

### OPINION

In this original proceeding, Liberty County Mutual Insurance Company seeks

relief from the trial court's order compelling discovery related to severed and abated

claims arising from uninsured/underinsured motorist insurance coverage.[1] We

conditionally grant relief.

---

[1] The underlying case is *Latrisha Morris v. Liberty County Mutual Insurance Company*, cause number 2016-28433, pending in the 165th District Court of Harris County, Texas, the Honorable Ursula A. Hall presiding.

**Background**

The underlying suit arises out of a car accident that occurred in May 2014. Latrisha Morris was injured when her vehicle was struck by a vehicle driven by Amitbhali Momim.

Morris was insured under an automobile insurance policy underwritten by Liberty Mutual. The insurance policy provides for uninsured/underinsured motorist coverage. Under this provision, Liberty Mutual is obligated to "pay compensatory damages which [Morris] is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury:' (1) sustained by an 'insured;' and (2) caused by an accident."

In May 2016, Morris sued Momim and Liberty Mutual, asserting that Momim's negligence caused the accident and that Momim was not insured for it. Against Liberty Mutual, Morris sought declaratory relief that Liberty was contractually liable under the insurance policy, and asserted both contractual and extra-contractual fraud and statutory claims against it based on its failure to pay policy benefits.

**A.     Severance and Abatement of Extra-Contractual Claims**

Liberty Mutual moved to sever the contractual and extra-contractual claims against it into a separate action and to abate all activity related to these claims. *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2007). The trial

2

court granted the motion in part, and it severed and abated all pending causes of action against Liberty Mutual except for Morris's claims for breach of contract and declaratory judgment. Thus, the extra-contractual claims were severed and abated but the contractual claims continued to proceed in the underlying case.

## B.  Plaintiff's Discovery Requests

Morris subsequently served Liberty Mutual with interrogatories, requests for admissions, and requests for production. These requests sought discovery of Liberty Mutual's claims history, the basis for its alleged denial of Morris's claim for uninsured motorist coverage, prior similar lawsuits, and internal policies and procedures concerning uninsured motorist investigations. Examples from the interrogatories include requests that Liberty Mutual:

- "[S]tate the amount of all settlement offers made by [Liberty Mutual] in an effort to resolve Plaintiff's claim prior to suit being filed and the method you used and how you calculated this amount and/or Plaintiff's damages."

- "State the procedures relied upon and the criteria utilized by [Liberty Mutual] in its investigation of Plaintiff's claim to evaluate and place a dollar value on her claim."

- "Identify every person who participated to any degree in the investigation and adjusting of the claims, defenses, or issues involved in this case, describe the involvement of each person identified, list their qualifications, state the dates of each investigation, and whether it was reduced to writing and describe in detail the investigation and information gathering process that they utilized to assist you in your decision to deny or adjust payment of Plaintiff's claim."

- "Identify every person who has complained, within the past five (5) years in Texas, about any claim adjustment and/or denial based on any of the reasons that you contend support your adjustment and/or denial of Plaintiffs claim."

- Provide the following information for the last five years: (a) "the total number of written claims filed, including the original amount filed for by the insured and the classification by line of insurance of each individual written claim;" (b) "the total number of written claims denied," (c) "the total number of written claims settled, including the original amount filed for by the insured, the settled amount, and the classification of line of insurance of each individual settled claim;" (d) "the total number of written claims for which lawsuits were instituted against [Liberty Mutual], including the original amount filed for by the insured, the amount of final adjudication, the reason for the lawsuit, and the classification by line of insurance of each individual written claim;" and (e) "the total number of complaints, their classification by line of insurance, the nature of each complaint, the disposition of these complaints, and the time it took to process each complaint."

Liberty Mutual filed objections and responses to the requests, contending that the requested discovery was irrelevant to any current cause of action because a cause of action for uninsured motorist benefits does not arise until the underlying tort suit is resolved:

> To the extent Plaintiff seeks to recover [uninsured motorist] benefits, there has been no legal determination that Defendant is under any contractual duty to pay benefits, and there presently exists no legally cognizable basis for Plaintiff to request information concerning any cause of action for Breach of Contract, Common Law Bad Faith, and/or violations of the Texas Insurance Code or Texas Deceptive Trade Practices Act, Breach of Fiduciary Duty, Fraud or recovery of attorney's fees because they are immaterial and irrelevant to the underlying tort lawsuit and thus not reasonably calculated to lead to the discovery of admissible evidence as to any viable claims or causes of action against this Defendant. *See Brainard v. Trinity Universal Insurance Company*, 216 S.W.3d 809, 818 (Tex. 2007).

4

Liberty Mutual's claims adjuster, Marianne Cagle, reviewed and verified the discovery responses. Morris requested Cagle's deposition. Consistent with its objections to the discovery requests, Liberty Mutual responded that there was no basis to depose Cagle until the issues of liability, damages, and coverage are resolved.

## C.    Liberty Mutual's Motion to Quash Deposition

Liberty Mutual moved to quash the deposition of Cagle as overbroad, harassing, and irrelevant to the issues of liability, damages, and coverage. Liberty Mutual stipulated that it had issued a policy of insurance to Morris, that the policy included uninsured motorist benefits, and that the underlying accident is a covered event. But Liberty Mutual asserted that "the only issues involved in this lawsuit is the liability of [Morris] and the alleged tort-feasor, Amitbhali Momim, that were both involved in the underlying motor vehicle accident and the amount of [Morris's damages resulting from the underlying motor vehicle accident." Liberty Mutual contends that the deposition is sought regarding Cagle's role as a claims adjuster and necessarily seeks discovery as to the abated extra-contractual claims.

Morris responded that she seeks to depose Cagle "as the person who had information regarding Defendant's discovery responses, including [Morris's] declaratory judgment claim."

After conducting a hearing, the trial court denied Liberty Mutual's motion to quash and directed it to produce Cagle for deposition within sixty days.

Morris then amended her petition in the underlying case to remove all claims against Liberty Mutual except her claim for declaratory judgment. A determination has not been made as to Momim's negligence and/or liability for the underlying accident, the existence and amount of Morris's damages, or Momim's status as an underinsured motorist.

## Standard of Review

Discovery matters are generally within the trial court's sound discretion, but "mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal." *In re Colonial Pipeline Co.*, 968 S.W.3d 938, 941 (Tex. 1998); *see Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). A clear abuse of discretion occurs when the trial court's decision is so arbitrary and unreasonable that it amounts to clear error. *See Walker,* 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). Because a trial court has no discretion in determining what the law is, the trial court abuses its discretion if it clearly fails to analyze or apply the law correctly. *See id.* at 840. "To satisfy the clear abuse of discretion standard, the relator must show 'that the trial court could reasonably have reached only one decision.'" *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (quoting

*Walker*, 827 S.W.2d at 840). "In determining whether appeal is an adequate remedy, appellate courts consider whether the benefits outweigh the detriments of mandamus review." *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008).

## Discussion

In seeking mandamus relief, Liberty Mutual contends that (1) discovery beyond the issues of liability and damages regarding the underlying accident is irrelevant because it is not liable until these issues have been determined; and (2) Cagle's assistance with answering interrogatories regarding Morris's policy is an insufficient basis to allow the deposition at this stage of the case. Liberty Mutual further asserts that it lacks an adequate remedy by appeal because it is being compelled to bear the burden of providing a deposition not relevant to any current claim. In response to the petition, Morris argues that (1) she is entitled to depose Cagle because "[t]he deposition of a witness who provides discovery responses is relevant" and (2) Liberty has an adequate remedy by appeal.

### A. Scope of Discovery

A trial court must make an effort to impose reasonable limits on discovery. *In re Am. Optical*, 988 S.W.2d 711, 713 (Tex. 1998). Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (citing *Am. Optical*, 988 S.W.2d at 713). Thus, discovery requests—including

7

depositions—must be reasonably tailored to include only matters relevant to the case. *Id.* Information is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action or defense more or less probable than it would be without such information. *See* TEX. R. EVID. 401.

Because Morris dismissed her breach of contract claim and her extra-contractual claims have been severed and abated, Morris's only pending claim in the underlying case is her request for a declaratory judgment regarding Liberty Mutual's obligation to pay uninsured motorist benefits under the policy. For the reasons discussed below, we conclude that the trial court erred in denying Liberty Mutual's motion to quash because the information sought through Cagle's deposition is neither relevant to Morris's pending claims nor reasonably calculated to lead to the discovery of admissible evidence. *See* TEX. R. CIV. P. 192.3(a); TEX. R. EVID. 401.

### 1. The pending claims are limited to third party liability for the accident.

The scope of relevant discovery in uninsured motorist cases differs from other insurance disputes because, unlike most first-party cases in which the terms of the policy alone dictate the outcome, uninsured motorist coverage hinges on the liability of the alleged uninsured, at-fault third-party motorist, under applicable tort law. *See Brainard*, 216 S.W.3d at 818 (citing *Henson v. S. Farm Bur. Cas. Ins. Co.*, 17 S.W.3d 652, 654 (Tex. 2000)). Consequently, "the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined." *Id.*; *see*

8

*also In re United Fire Lloyds*, 327 S.W.3d 250, 255 (Tex. App.—San Antonio 2010, orig. proceeding)

To recover benefits under an uninsured motorist policy, a policy beneficiary must show (1) that the insured has underinsured motorist coverage, (2) that the underinsured motorist negligently caused the accident that resulted in the covered damages, (3) the amount of the insured's damages, and (4) that the underinsured motorist's insurance coverage is deficient. *See Brainard* 216 S.W.3d 809 at 818; *State Farm v. Nickerson*, 216 S.W.3d 823, 824 (Tex. 2006); *Norris*, 216 S.W.3d at 822-23; *Henson*, 17 S.W.3d at 654; *In re Progressive County Mut. Ins. Co.*, 439 S.W.3d 422, 426-27 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re United Fire Lloyds*, 327 S.W.3d at 255. Accordingly, "a claim for [uninsured motorist] benefits is not presented until the trial court signs a judgment" resolving these issues. *Brainard*, 216 S.W.3d at 818.

Liberty Mutual stipulated in its pleadings and responses that (1) Morris was insured for uninsured motorist benefits under its policy; and (2) the underlying accident was a covered occurrence under the policy's provisions. This stipulation narrows the relevant issues in the present case to those of a "typical car wreck" case—namely, (1) Momim's liability for the underlying car accident, (2) Momim's uninsured/underinsured status, and (3) the existence and amount of Morris's damages. *See In re Progressive*, 439 S.W.3d at 427.

In determining whether Morris is entitled to discovery on her declaratory judgment claim prior to a judgment on liability and damages regarding the underlying accident, we are guided by case law requiring the severance and abatement of extra-contractual claims. *See*, *e.g*., *In re Progressive*, 439 S.W.3d at 426-27. An insured must first establish that the insurer is liable on the contract before the insured can recover on extra-contractual causes of action against an insurer for failing to pay or settle an underinsured motorist insurance claim. Thus, extra-contractual claims must be severed and abated until the underinsured motorist breach of contract claim is determined. *See In re Allstate Cnty Mut. Ins*. Co., 447 S.W.3d 497; *In re Progressive*, 439 S.W.3d 422. The rationale for requiring abatement and severance of these types of claims is that they may be rendered moot by a determination of underlying liability. *See U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 673 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding) ("Abatement of the bad faith claims must necessarily accompany severance of those claims from the contract claim. Without abatement, the parties will be put to the effort and expense of conducting discovery and preparing for trial of claims that may be disposed of in a previous trial."); *In re United Fire Lloyds*, 327 S.W.3d at 265 (holding that abatement of the insured's extra-contractual claims was required to "do justice, avoid prejudice, and further convenience.").

We apply similar reasoning to the case at hand. Because Liberty Mutual's contractual obligations do not ripen until after Morris has obtained a judgment against Momim on liability, damages, and coverage, the requested discovery is irrelevant to any current claims, which are the building blocks for an eventual determination of the parties' contractual rights. *See In re Progressive*, 439 S.W.3d at 426-27; *In re United Fire Lloyds*, 327 S.W.3d at 256. An insurer is not required to incur litigation expenses on these issues because they may be rendered moot by the trial of the underlying accident. *Id.*; *see also In re State Farm Mut. Auto. Ins. Co.*, 395 S.W.3d 229, 237 (Tex. App.—El Paso 2012, orig. proceeding); *In re Am. Nat. Cnty. Mut. Ins. Co.*, 384 S.W.3d 429, 437 (Tex. App.—Austin 2012, no pet.).

Our decision in *In re Progressive* is instructive. *Progressive* concerned, among other things, a trial court's refusal to abate discovery in an uninsured motorist case. 439 S.W.3d at 428. Our court recognized that, "to prevail on her extra-contractual claims . . . [the plaintiff] must demonstrate that [the insurer] was contractually obligated to pay her uninsured motorist claim." *Id.* at 427. Because the existence of coverage for the accident was not in dispute, this "will essentially involve the issues in a typical car wreck: the comparative negligence of [the plaintiff] and the other driver and [the plaintiff's] damages." *Id.* We reasoned that requiring the parties to engage in discovery on matters unrelated to these issues—including the insurer's uninsured motorist claims-handling history and its internal policies and

11

procedures concerning the investigation of uninsured motorist claims—before the underlying liability was determined would be "manifestly unjust." *Id*. On this basis, we held that the trial court erred in refusing to abate discovery as to issues beyond the underlying car accident. *Id*. at 427-28.

As in *Progressive*, Liberty Mutual has conceded the existence of coverage—namely, that Morris was an insured under the policy and that the underlying accident was a covered occurrence under the policy's UIM provisions. Accordingly, the remaining issues are those relating to the underlying accident: (1) Momim's liability for the car accident, (2) Momim's uninsured/underinsured status, and (3) the existence and amount of Morris's damages. It is undisputed that there has been no judgment or other judicial determination as to any of these issues. Absent such judgment, Liberty Mutual owes no contractual or extra-contractual UIM duties.

The deposition of Cagle is irrelevant to the issues currently pending in the case. Cagle's only connection to the underlying car accident and resulting damages is that she is a claims adjuster for the insurance company that underwrites Morris's policy and signed the company's discovery responses. Cagle's testimony would not have "any tendency to make a fact more or less probable" as to any of the relevant issue in the current case. TEX. R. EVID. 401. Although Cagle's testimony as to Liberty Mutual's claim-handling activities or its general policies and procedures is

12

relevant to Morris's extra-contractual claims, those claims have been properly severed and abated. *See In re Progressive*, 439 S.W.3d at 427.

In sum, Morris requests a deposition of a claims adjuster when she does not have a justiciable cause of action against Liberty Mutual for uninsured motorist benefits. The information Morris seeks to discover may become relevant, but not unless Morris obtains a judgment establishing (1) Momim's liability for the underlying car accident, (2) Momim's uninsured/underinsured status, and (3) the existence and amount of Morris's damages.

### 2. Morris has not otherwise demonstrated a basis for the discovery.

Morris further argues that she is entitled to depose Cagle because Cagle "assisted or provided information in answering [Liberty Mutual's] interrogatories" and verified its interrogatory answers. Morris's circular argument that the mere act of objecting to requests that are beyond the scope of permissible discovery can itself serve as the basis for obtaining discovery on the same irrelevant issues would, if permitted, render discovery requirements meaningless.

Liberty Mutual objected to the majority of the questions propounded in the interrogatories as outside the scope of permissible discovery. The interrogatories primarily sought information regarding Morris's extra-contractual claims, which were severed and abated by the trial court. Liberty Mutual's objections that discovery on the severed and abated claims was improper are well-founded. *See In*

*re Farmers Tex. Cnty. Mut. Ins*. Co., 509 S.W.3d 463, 467 (Tex. App.—Austin 2015, orig. proceeding) ("The record, however, includes discovery requests propounded by [plaintiff] that are broader than his breach of contract claim, his factual allegations in his pleadings, and a copy of the section of his insurance policy addressing the relevant UIM coverage . . . ."). Nothing in Liberty Mutual's interrogatory answers suggests that Cagle has any knowledge relevant to the issues of Momim's liability, damages, or underinsured status. Discovery propounded on irrelevant issues does not become relevant by a party correctly objecting to its relevance and providing the required designations.

Apart from its objections, Liberty Mutual provided answers in response to interrogatories pertaining to Morris's medical records. These answers, however, merely refer to Morris's medical records. For instance, Interrogatory No. 4 requested that Liberty Mutual "identify each medical bill you received for Latrisha Morris, including the date received, the amount submitted, the name of the provider, the amount paid for each bill and the reason for denial of Uninsured benefits for each bill since May 5, 2014." Liberty Mutual objected that the request was in part irrelevant, but responded as follows: "Subject to and without waiving the foregoing objections, see copies of all medical bills of Plaintiff received by Defendant [with corresponding label numbers] . . ."

Morris's medical records are relevant to the amount of damages she claimed as a result of the accident, but Cagle's verification of the interrogatories is an insufficient basis to allow the deposition. The only relevant testimony Cagle could provide would consist of confirming that Liberty Mutual had produced the medical records that it had been provided. Morris has independent and superior access to her own records, and deposing Cagle on their contents would be unreasonable and unduly burdensome. *See* TEX. R. CIV. P. 192.4(a) (providing that discovery should be limited when "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"); *see also In re Arras*, 24 S.W.3d 862, 864 (Tex. App.—El Paso 2000, no pet.) (granting mandamus relief challenging order requiring claims representative to submit to deposition because plaintiffs already received "the exact information" from car accident defendants and thus "the information sought by Plaintiffs is clearly obtainable from some other source that is more convenient, less burdensome, or less expensive" and "the information sought via deposition and subpoena duces tecum is unreasonably cumulative and/or duplicative.").

Finally, the discovery that Morris seeks may become relevant once liability for the car accident is determined. Morris relies on the decisions in *In re Luna* and *In re Garcia* to contend that the verifying agent who answers discovery requests is always subject to deposition. *See In re Luna,* No. 13-16-00467-CV, 2016 WL

15

6576879, at \*1 (Tex. App.—Corpus Christi, Nov. 7, 2016, orig. proceeding); *In re Garcia,* No. 04-07-00173-CV, 2007 WL 1481897, at \*1 (Tex. App.—San Antonio May 23, 2007, orig. proceeding). In both cases, the courts of appeals granted mandamus relief to allow the deposition of an insurer's representative in actions for uninsured motorist coverage. But these cases are distinguishable because both cases arose after liability of the third party driver had been determined and the coverage dispute had ripened. In *Luna*, the plaintiff had obtained a default judgment against the other motorist in her personal injury suit. *See* 2016 WL 6576879, at \*1. In *Garcia,* the plaintiff had "collected from the other motorist's liability insurer at the full policy limits." 2007 WL 1481897, at \*1. But the insurer disputed the plaintiff's actual damages. *See id.* at \*2. Unlike *Garcia*, there is no indication at this stage of Morris's case that Cagle's deposition is relevant to any asserted defense, as questions about uninsured motorist coverage await determination of primary liability and damages.

## B. Adequate Remedy by Appeal

Finally, to be entitled to mandamus relief, Liberty Mutual also must demonstrate that it lacks an adequate remedy by appeal. Because we conclude that the order compels discovery irrelevant to the underlying case, Liberty Mutual necessarily lacks an adequate remedy by appeal. *See In re CSX Corp.*, 124 S.W.3d at 153. ("We have said that where a discovery order compels production of 'patently

irrelevant or duplicative documents' . . . there is no adequate remedy by appeal because the order 'imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party.'") (quoting *Walker*, 827 S.W.2d at 843). Insurers have a substantial right not to undergo the expense of conducting discovery on issues that ultimately may be unnecessary because of the result in the underlying tort case. *See In re Old Am. Cnty. Mut. Ins. Co.*, No. 13–11–00412–CV, 2012 WL 506570, at \*5 (Tex. App.—Corpus Christi Feb. 16, 2012, orig. proceeding); *see also United Fire Lloyds*, 327 S.W.3d at 257. Insurers similarly have been held to lack an adequate remedy by appeal when required to respond to discovery for extra-contractual claims that may be rendered moot by the determination of the breach of contract claims. *See Allstate*, 447 S.W. at 504; *In re Progressive*, 439 S.W.3d at 427–28; *see also In re State Farm*, 395 S.W.3d at 239. If mandamus is not granted, Liberty Mutual would be required to prepare for and respond to discovery concerning claims that similarly lack justiciability. *See Millard*, 847 S.W.2d at 675; *In re Trinity Universal Ins*. Co., 64 S.W.3d 463, 468 (Tex. App.—Amarillo 2001, orig. proceeding).

## Conclusion

For the forgoing reasons, we conditionally grant the petition for writ of mandamus and direct the trial court to (1) vacate its order compelling the deposition and (2) grant Liberty Mutual's motion to quash. We are confident that the trial court

17

will promptly comply, and our writ will issue only if it does not. We dismiss any pending motions as moot.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Bland.