Opinion by: Sandee Bryan Marion, Chief Justice
In the underlying underinsured motorist lawsuit, the real parties in interest sued relators on contractual and extra-contractual causes of action. The trial court severed plaintiffs' contractual claim from their extra-contractual claims, but did not abate the extra-contractual claims pending resolution of the contract claim. In this mandamus proceeding, relators assert the trial *559 court erred when it refused to abate the extra-contractual claims. We agree and conditionally grant the petition for writ of mandamus.
BACKGROUND
The real parties in interest (hereinafter, the "plaintiffs") were involved in an automobile accident, which they contend was caused by the negligence of the other driver whom they allege is underinsured. After the accident, the other driver's insurance company tendered the full per person liability policy limit of $30,000 to each plaintiff. The plaintiffs then made a claim to their insurance company, State Farm Mutual Automobile Insurance Company, under their policy that includes coverage for injuries, damages, and expenses sustained due to an underinsured motorist. According to plaintiffs, State Farm never responded to their demand; therefore, they sued State Farm and its two adjustors, Janet Ann Lorenz-Floyd and Lisa Horton. Plaintiffs alleged State Farm and its employees (collectively, the "relators") failed to pay in accordance with the terms of the policy. The plaintiffs alleged causes of action for breach of contract, as well as extra-contractual claims for violations of the Texas Insurance Code. The relators filed an answer and a motion asking the trial court to (1) sever plaintiffs' contractual claim from their extra-contractual claims and (2) abate the extra-contractual claims until the contract claim is resolved. The plaintiffs did not challenge the request for a severance, but objected to an abatement. The trial court granted the severance and denied the abatement. Relators then filed their petition for writ of mandamus in this court. The plaintiffs filed a response to the petition, to which relators replied.
In their petition, relators argue the trial court erred by not granting the abatement because the plaintiffs may not litigate their extra-contractual claims until after they obtain a judgment establishing (1) the other driver is at fault, (2) the extent of the resulting damages, and (3) the other driver is underinsured. Relators assert that until plaintiffs obtain this judgment, State Farm is under no contractual duty to pay underinsured motorist ("UIM") benefits.
DISCUSSION
The Texas Insurance Code provides as follows:
In this section, "uninsured or underinsured motorist coverage" means the provisions of an automobile liability insurance policy that provide for coverage in at least the limits prescribed by Chapter 601, Transportation Code, that protects insureds who are legally entitled to recover from owners or operators of uninsured or underinsured motor vehicles damages for bodily injury, sickness, disease, or death, or property damage resulting from the ownership, maintenance, or use of any motor vehicle.
TEX. INS. CODE ANN. § 1952.101(a) (West 2009) (emphasis added).
The Texas Supreme Court has interpreted this language to mean "the UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist." Brainard v. Trinity Universal Ins. Co. , 216 S.W.3d 809, 818 (Tex. 2006) (interpreting prior version of statute). "Neither requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay." Id. "Where there is no contractual duty to pay, there is no just amount owed." Id. The Brainard Court held the plaintiff's argument that a "UIM policy is to be treated like other contracts, for which damages are liquidated in a judicial proceeding and attorney's fees incurred are *560 recoverable, misinterprets the nature of UIM insurance":
The UIM contract is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party. Unlike many first-party insurance contracts, in which the policy alone dictates coverage, UIM insurance utilizes tort law to determine coverage. Consequently, the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined.
Id. ; see also Weber v. Progressive County Mut. Ins. Co. , 05-17-00163-CV, 2018 WL 564001, at *3 (Tex. App.-Dallas Jan. 26, 2018, no pet. h.) (mem. op.) (concluding trial court did not abuse its discretion when it sustained special exceptions that Weber's claim for breach of contract was premature because her petition did not assert she had obtained a judgment against the underinsured driver; thus, she did not establish the existence of a duty or obligation the insurer failed to meet).
Although Brainard involved a determination about when presentment of a contract claim is made to determine when a party is entitled to attorney's fees, this court applied Brainard to the issue of abatement. In In re United Fire Lloyds , the insurer moved to sever and abate Garcia's UIM claim from the bad faith claims. 327 S.W.3d 250, 253 (Tex. App.-San Antonio 2010, orig. proceeding). Garcia then filed a motion for a bifurcated trial as an alternative to the severance and abatement. Id. Following Brainard , this court held that for Garcia to recover under his UIM claim, he must prove not only the purported underinsured motorist negligently caused the accident that resulted in the covered damages, but also that all applicable policy provisions had been satisfied. Id. at 255. Therefore, this court concluded that, given the clear holding in Brainard , the insurer should not be required to incur litigation expenses on claims that could be rendered moot by the portion of the trial related to UIM benefits and may not have even yet accrued. Id. at 256. Accordingly, this court held abatement of the insured's extra-contractual claims was required to "do justice, avoid prejudice, and further convenience." Id.
The plaintiffs assert the Texas Supreme Court's decision in USAA Texas Lloyds Co. v. Menchaca , 14-0721, 2018 WL 1866041 (Tex. Apr. 13, 2018),[2] nullified the need for abatement in cases involving first-party claims because breach of contract claims and extra-contractual claims are separate causes of action that exist independent of each other. The plaintiffs contend the "Texas Supreme Court held that a plaintiff no longer has to rely on a finding of breach in his/her [sic] in order to pursue claims based on statutory violations." According to plaintiffs, Menchaca "changes the evidentiary landscape relied upon by insurers under Brainard by freeing insureds from first having to prove a breach of contract before pursuing damages for extra-contractual violations, at least where an insurer has not promptly *561 denied a claim that is, in fact, not covered." Plaintiffs also make a public policy argument that Menchaca "corrects a long-standing pattern of inequitable outcomes favoring insurers under Brainard ." We believe the plaintiffs read Manchaca too broadly.
First, Menchaca never mentions Brainard , much less overrules or limits Brainard . When Texas Supreme Court decisions create uncertainties, "it is [the Supreme Court's] duty to settle the conflicts in order that the confusion will as nearly as possible be set at rest ...." Trapp v. Shell Oil Co. , 145 Tex. 323, 198 S.W.2d 424, 427 (1946). It is the prerogative of the Texas Supreme Court to overrule its own decisions and, until it expressly does so, we are bound by the caselaw that directly applies. Weber , 2018 WL 564001, at *3 ("[w]hatever the virtues of a contrary rule might be, as an intermediate court, we are bound to follow the rule laid down in Brainard unless and until the supreme court reconsiders or revises it."); see also Rodriguez de Quijas v. Shearson/Am. Express, Inc. , 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [appellate court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); Owens Corning v. Carter , 997 S.W.2d 560, 571 (Tex. 1999) (same); In re Smith Barney, Inc. , 975 S.W.2d 593, 598 & n.27 (Tex. 1998) (same); Va. Indon. Co. v. Harris Cty. Appraisal Dist. , 910 S.W.2d 905, 912 (Tex. 1995) (same); In re Fort Apache Energy, Inc. , 482 S.W.3d 667, 669 (Tex. App.-Dallas 2015) (orig. proceeding) (same).
Second, Menchaca did not involve a UIM claim or whether contractual and extra-contractual claims should be severed and abated. Instead, it involved a first-party claim by the insured against her insurer for storm damage to the insured's home. In Menchaca , the jury answered "no" to the question of whether USAA breached the contract, but answered "yes" to the question of whether USAA engaged in various unfair or deceptive practices. 2018 WL 1866041, at *2. On appeal, Menchaca asserted she could recover policy benefits as damages resulting from USAA's statutory violation because that claim was independent from her claim for policy breach. The Supreme Court characterized the issue as whether the insured could recover policy benefits based on jury findings that the insurer violated the Texas Insurance Code and the violation resulted in the insured's loss of benefits the insurer "should have paid" under the policy, even though the jury did not find that the insurer failed to comply with its obligations under the policy. Id. at *1, 17. In resolving the appeal, the Supreme Court sought to clarify its precedent by announcing five rules that address the relationship between contract claims under an insurance policy and tort claims under the Insurance Code. Id. at *1, 7. However, before clarifying the five rules, the Court noted:
An insured's claim for breach of an insurance contract is "distinct" and "independent" from claims that the insurer violated its extra-contractual common-law and statutory duties. ... A claim for breach of the policy is a "contract cause of action," while a common-law or statutory bad-faith claim "is a cause of action that sounds in tort." But the claims are often "largely interwoven," and the same evidence is often "admissible on both claims."
Id. at *5 (internal citations omitted).
The Court summarized its rules as follows:
*562 In an effort to clarify these issues, we distill from our decisions five distinct but interrelated rules that govern the relationship between contractual and extra-contractual claims in the insurance context. First, as a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits. Second, an insured who establishes a right to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of the benefits. Third, even if the insured cannot establish a present contractual right to policy benefits, the insured can recover benefits as actual damages under the Insurance Code if the insurer's statutory violation caused the insured to lose that contractual right. Fourth, if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits. And fifth, an insured cannot recover any damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.
Id. at *5. The Court ultimately rejected Menchaca's independent-claims argument because "the Insurance Code only allows an insured to recover actual damages 'caused by' the insurer's statutory violation." Id. at *8.
Menchaca stated that a breach of contract claim is "distinct and independent" from extra-contractual claims, while Brainard set forth the test an insured must satisfy before pursuing extra-contractual claims in an UIM case. These holdings are consistent with each other. Nor do we believe Menchaca nullified Brainard 's holding that a "UIM contract is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party." Brainard , 216 S.W.3d at 818 (emphasis added). In fact, Menchaca "clarif[ied] and affirm[ed] the general rule that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy." 2018 WL 1866041, at *10. Brainard also drew a distinction between first-party insurance contract claims (as considered in Menchaca ) and UIM contracts: "Unlike many first-party insurance contracts, in which the policy alone dictates coverage, UIM insurance utilizes tort law to determine coverage. Consequently, the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined." Brainard , 216 S.W.3d at 818.
Because we believe the holding in Menchaca is consistent with the holding in Brainard , we next address the precise issue here, which was not addressed in either Menchaca or Brainard : whether extra-contractual claims should be abated pending resolution of the contractual claims in an UIM case. Since the issuance of Menchaca , only a few appellate opinions involving UIM claims have issued, two of which are relevant here. See In re Allstate Fire & Cas. Ins. Co. , 12-17-00266-CV, 2017 WL 5167350, at *4 (Tex. App.-Tyler Nov. 8, 2017, orig. proceeding) (mem. op.); In re Liberty County Mut. Ins. Co. , 537 S.W.3d 214, 219-20 (Tex. App.-Houston [1st Dist.] 2017, orig. proceeding).
In these two cases, the trial court granted the request for severance and abatement, and the issue was whether the plaintiff-insured was entitled to discovery on the extra-contractual claims. In both cases, *563 the insurer argued discovery on the extra-contractual claim was irrelevant until a judgment had been obtained on the breach of contract claim. In determining whether the insured was entitled to the requested discovery prior to satisfying the Brainard test, the Allstate Fire and Liberty County courts were guided by case law requiring the severance and abatement of extra-contractual claims:
An insured must first establish that the insurer is liable on the contract before the insured can recover on extra-contractual causes of action against an insurer for failing to pay or settle an underinsured motorist insurance claim. Thus, extra-contractual claims must be severed and abated until the underinsured motorist breach of contract claim is determined. The rationale for requiring abatement and severance of these types of claims is that they may be rendered moot by a determination of underlying liability. [citations omitted]
Id. Both courts determined discovery related to the extra-contractual claims was irrelevant to the contractual claims because the insured had not yet obtained a judgment against the underinsured motorist; therefore, "[a]n insurer is not required to incur litigation expenses on these issues because they may be rendered moot by the trial of the underlying accident." Allstate Fire & Cas. Ins. , 2017 WL 5167350, at *4 ; Liberty County Mut. Ins. , 537 S.W.3d at 221.
We consider these cases instructive in the context of a third-party UIM case because they recognize that (1) discovery on a contractual claim may not be relevant to discovery on the extra-contractual claim, and (2) an insurer should not be required to incur litigation expenses on extra-contractual claims that may be rendered moot by trial on the contractual claim.[3]
However, the plaintiffs cite two pre- Menchaca cases to argue Menchaca "coincides with appellate decisions showing a trend towards favoring the allowance of discovery in first-party cases." We first note, UIM cases are not first-party cases. Also, unlike here, in both cases, the insured's extra-contractual claims were severed and abated pending their contractual claims against the insurer (in both cases, State Farm), and the insured obtained a judgment against the UIM driver before proceeding on the contractual claims. See In re Luna , 13-16-00467-CV, 2016 WL 6576879, at *1 (Tex. App.-Corpus Christi Nov. 7, 2016, orig. proceeding) ; In re Garcia , 04-07-00173-CV, 2007 WL 1481897, at *1 (Tex. App.-San Antonio May 23, 2007, orig. proceeding). The insured noticed the deposition of State Farm's representative. State Farm successfully moved to quash the deposition, and the insured sought mandamus relief. In both cases, one of State Farm's arguments was that the insured was not entitled to the discovery because extra-contractual matters were not relevant to the contractual claims. Luna , 2016 WL 6576879, at *4 ; Garcia , 2007 WL 1481897, at *1. In both cases, the *564 appellate court disagreed with State Farm's characterization of the sought-after discovery.
The Luna and Garcia courts noted the topics encompassed by the deposition notice corresponded to State Farm's defenses and theories or had a direct bearing on the damages in the insured's breach of contract claim. Luna , 2016 WL 6576879, at *7 ; Garcia , 2007 WL 1481897, at *2. Both courts held the trial court abused its discretion by quashing the deposition because
doing so unreasonably restricted [the insured's] access to relevant information. Without the opportunity to fully discover information about State Farm's multiple defenses, [the insured] is effectively prevented from verifying or refuting those defenses. Moreover, as State Farm acknowledges in its brief, [the insured] must establish at trial that "her damages exceed the underlying liability insurance limits and any other offsets or credits State Farm may be entitled to." Thus, quashing the deposition in its entirety severely compromises [the insured's] ability to present and prove her case.
Garcia , 2007 WL 1481897, at *2 ; see also Luna , 2016 WL 6576879, at *7 (citing to Garcia and holding same).
We do not believe either Luna or Garcia is inconsistent with the continued viability of Brainard or support a conclusion that abatement of extra-contractual claims should not be ordered in UIM cases. We also disagree with plaintiffs' argument that these cases stand for the proposition that a plaintiff may seek discovery on matters relevant to their UIM claims while their breach of contract claims is still pending. In both cases, the trial court had severed and abated the extra-contractual claims, and both appellate courts allowed discovery in the breach of contract case to proceed to the extent such discovery was relevant to the claims and defenses raised by the parties in the breach of contract case. Here, the plaintiffs do not argue they are prevented from discovery of matters relevant to the claims and defenses raised in their breach of contract case.
We conclude Menchaca 's"distinct and independent" holding does not inevitably lead to the conclusion that abatement of extra-contractual claims is no longer required in a UIM case when the UIM claim is disputed. The right to recover UIM damages is governed by statute. See TEX. INS. CODE § 1952.101(a). UIM claims are not straight-forward insurer-insured first-party claims because UIM "benefits are conditioned upon the insured's legal entitlement to receive damages from a third party." See Brainard , 216 S.W.3d at 818 ; see also United Fire Lloyds , 327 S.W.3d at 256 (holding bifurcation is appropriate alternative to severance "because a UIM claim that involves a dispute as to whether there is a covered loss is distinguishable from a homeowners' insurance claim where the existence of a covered loss is not disputed"). For this reason, "[t]he scope of relevant discovery in uninsured motorist cases differs from other insurance disputes because, unlike most first-party cases in which the terms of the policy alone dictate the outcome, uninsured motorist coverage hinges on the liability of the alleged uninsured, at-fault third-party motorist, under applicable tort law." Allstate Fire , 2017 WL 5167350, at *3 ; Liberty County , 537 S.W.3d at 220. Thus, because of their unique nature, UIM extra-contractual claims can be rendered moot if the insured does not obtain a judgment against the underinsured motorist. Allstate Fire , 2017 WL 5167350, at *4 ; Liberty County , 537 S.W.3d at 220-21. Finally, because extra-contractual claims in a UIM case can be rendered moot, abatement is necessary to avoid litigation expenses *565 and conserve judicial resources. See United Fire Lloyds , 327 S.W.3d at 256 ; Allstate Fire , 2017 WL 5167350, at *4 ; Liberty County , 537 S.W.3d at 220-21.
CONCLUSION
Mandamus will issue only to correct a clear abuse of discretion for which the relator has no adequate remedy at law. In re Prudential Ins. Co. of Am. , 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding); Walker v. Packer , 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). For the reasons stated above, we conclude relators showed the trial court erred by not granting the abatement. Also for these reasons, relators do not have an adequate remedy by appeal because if mandamus is not granted relators stand "to lose substantial rights by being required to prepare for claims that may be rendered moot and may have not even yet accrued." United Fire Lloyds , 327 S.W.3d at 256. Therefore, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate that portion of its January 3, 2018 Order on Defendant's Motion to Sever and Abate denying State Farm's motion to abate and issue an order granting the motion, and abating the severed cause.
Dissenting opinion by: Rebeca C. Martinez, Justice
DISSENTING OPINION
Rebeca C. Martinez, Justice
I dissent from the majority's opinion conditionally granting mandamus relief from the trial court's order denying abatement of the real parties in interest's extra-contractual claims pending resolution of their contractual underinsured motorist claim (UIM). I disagree that abatement of severed extra-contractual claims in a disputed UIM case is always required, as strongly implied, if not stated, by the majority opinion.
As the majority acknowledges, neither Brainard nor Menchaca addressed the precise issue presented here: "whether extra-contractual claims should be abated pending resolution of the contractual claims in an UIM case." See Brainard v. Trinity Universal Ins. Co. , 216 S.W.3d 809, 818 (Tex. 2006) (holding that a UIM contract is unique in that the insurer's contractual duty to pay benefits does not arise until liability and damages are determined, but not addressing the issue of a severance and abatement of contractual and extra-contractual claims); see also USAA Texas Lloyds Co. v. Menchaca , No. 14-0721, 2018 WL 1866041 (Tex. Apr. 13, 2018) (does not involve a UIM claim or the issue of whether contractual and extra-contractual claims should be severed or abated). Thus, the Supreme Court has not stated that abatement is mandated, without regard for the circumstances of the particular case.
The majority concludes that, "because extra-contractual claims in a UIM case can be rendered moot, abatement is necessary to avoid litigation expenses [incurred by the insurer] and conserve judicial resources." Relying on two post- Menchaca opinions by sister courts, the majority reasons that abatement is required in a third-party UIM case because "(1) discovery on a contractual claim may not be relevant to discovery on the extra-contractual claim, and (2) an insurer should not be required to incur litigation expenses on extra-contractual claims that may be rendered moot by trial on the contractual claim." See In re Allstate Fire & Cas. Ins. Co. , No. 12-17-00266-CV, 2017 WL 5167350, at *4 (Tex. App.-Tyler Nov. 8, 2017, orig. proceeding) (mem. op.); see also *566 In re Liberty County Mutual Ins. Co. , 537 S.W.3d 214, 221-22 (Tex. App.-Houston [1st Dist.] 2017, orig. proceeding). However, as quoted, the cited rationales for abatement are conditional on the facts and circumstances of the case-discovery on the UIM claim "may not" be relevant to discovery on the extra-contractual claims, and the extra-contractual claims "may be rendered moot" by a trial on the UIM claim.
The majority also relies on a prior opinion by this court which involved abatement of extra-contractual claims in a UIM case. See In re United Fire Lloyds , 327 S.W.3d 250 (Tex. App.-San Antonio 2010, orig. proceeding). The issue there was whether the trial court erred in bifurcating the trial rather than granting the insurer's motion for severance and abatement of the bad faith claims against it on the grounds that introduction of a prior settlement offer would prejudice it in the UIM trial. After considering other courts of appeals' opinions addressing whether it was an abuse of discretion to refuse to order a severance of contractual claims from bad faith claims when a settlement offer had been made, we held that the trial court abused its discretion "in bifurcating the case instead of severing and abating." Id. at 256. I believe our holding should be limited to the facts of United Lloyds.
Until the Texas Supreme Court sets forth a mandate requiring abatement in all UIM cases with extra-contractual claims, I would hold the relators to their mandamus burden to show the trial court "clearly abused its discretion" by failing to abate under the circumstances of this particular case. The instant case presents a unique situation where the extra-contractual claims were severed from the contractual UIM claim, but abatement was denied. Thus, relators were required to establish a factual and legal basis for this court to conclude that denial of the abatement in this case was a clear abuse of discretion by the trial court. Relators did not make any specific complaint in the trial court about any particular discovery sought by the real parties in interest, or otherwise show that the insurer's interest in reducing litigation expenses warranted abatement. I believe relators therefore failed to meet their mandamus burden. See In re Prudential Ins. Co. of Am. , 148 S.W.3d 124, 136 (Tex. 2004). Therefore, I would deny the relators' petition for writ of mandamus.

When the petition for writ of mandamus and the response were filed, the Supreme Court's original April 7, 2017 opinion-to which the parties cited-was on rehearing. See USAA Tex. Lloyds Co. v. Menchaca , 14-0721, 2017 WL 1311752 (Tex. Apr. 7, 2017). After rehearing, the Court withdrew its 2017 opinion. The April 13, 2018 opinion cited in this opinion is not substantively different from the 2017 opinion. In its 2018 opinion, the Court "unanimously reaffirm[ed] the legal principles and rules announced in [the 2017] opinion ...." 2018 WL 1866041, at *1. Therefore, because there is no substantive difference between the two opinions that should change the parties' arguments in this mandamus proceeding, we cite to the recent 2018 opinion.

Another instructive case, albeit a pre-Menchaca case, held that, because it was undisputed the insureds had a covered loss, the trial court could have reasonably concluded a trial on the insureds' breach of contract claim would not eliminate the need for a trial on the extra-contractual claims. See In re Travelers Lloyds of Texas Ins. Co. , 273 S.W.3d 368, 373 (Tex. App.-San Antonio 2008, orig. proceeding). "Under these circumstances, the primary justification for abatement of the extra-contractual claims-avoiding the effort and expense of conducting discovery on claims that may be rendered moot in a previous trial-is non-existent because the disposition of the contractual claim will not moot the extra-contractual claims." Id. Here, whether the plaintiffs have a covered UIM loss is disputed because they have not yet obtained a judgment against the under-insured motorist.