**Opinion issued November 5, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00391-CV

————————————

## IN RE COLONIAL COUNTY MUTUAL INSURANCE COMPANY, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

### MEMORANDUM OPINION

Relator, Colonial County Mutual Insurance Company ("Colonial"), has filed a petition for writ of mandamus challenging the trial court's order denying abatement of certain extra-contractual claims arising from an uninsured/underinsured motorist coverage dispute.[1] We conditionally grant relief.

---

[1] The underlying case is *Abigail Shelger v. Lisselotte Ortiz and Nationwide Insurance Company*, cause number 2018-10671-A, pending in the 295th District Court of Harris County, Texas, the Honorable Donna Roth presiding.

## Background

This original proceeding arises from a personal injury lawsuit filed by Abigail Shelger against Lisselotte Ortiz for damages arising from a motor vehicle accident. Shelger later added Colonial as a defendant, asserting that Colonial failed to pay uninsured/underinsured motorist (UIM) benefits under a policy issued by Colonial.[2] Shelger asserted causes of action against Colonial for breach of contract, as well as extra-contractual causes of action for breach of the common law duty of good faith and fair dealing, and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act.

Colonial filed a motion to sever and abate Shelger's extra-contractual claims from her underlying UIM claim. Shelger filed a response agreeing that severance and abatement of her common law bad faith claims was proper but requested that her claims for statutory violations only be severed and not abated. The then-presiding judge, the Honorable Caroline Baker, granted Colonial's motion in part, signing an order severing the extra-contractual claims but abating discovery only as to Shelger's common law bad faith claim. The order provides that discovery is not abated as to the severed causes of action for violation of Sections 541 and 542 of the

---

[2]     Shelger incorrectly named Colonial as "Nationwide Insurance Company" in her suit.

Texas Insurance Code and violation of the Texas Deceptive Trade Practices Act (collectively, the "Statutory Extra-contractual Claims").

Colonial later filed a motion to reconsider with the successor trial court judge, the Honorable Donna Roth, requesting that the court similarly abate the Statutory Extra-contractual Claims as it abated the common law bad faith claim. After a hearing on the motion, the trial court denied Colonial's motion to reconsider. This mandamus petition followed. Our Court requested a response to the petition from the real party in interest but no response was filed.

**Standard of Review**

Mandamus will issue only to correct a trial court's clear abuse of discretion for which the relator has no adequate remedy at law. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A clear abuse of discretion occurs when the trial court's decision is so arbitrary and unreasonable that it amounts to clear error. *See Walker*, 827 S.W.2d at 839-40 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). Because a trial court has no discretion in determining what the law is, the trial court abuses its discretion if it clearly fails to analyze or apply the law correctly. *See id.* at 840. "To satisfy the clear abuse of discretion standard, the relator must show 'that the trial court could reasonably have reached only one decision.'" *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627,

3

630 (Tex. 1996) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840). "In determining whether appeal is an adequate remedy, [we] consider whether the benefits outweigh the detriments of mandamus review." *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).

**Abatement of Extra-contractual Claims**

In most circumstances, a trial court's decision to grant or deny a motion to abate is within the court's discretion. *See Project Eng'g USA Corp. v. Gator Hawk, Inc.,* 833 S.W.2d 716, 724 (Tex. App.—Houston [1st Dist.] 1992, no writ); *In re Am. Nat. Cnty. Mut. Ins. Co.,* 384 S.W.3d 429, 435 (Tex. App.—Austin 2012, orig. proceeding). Colonial asserts that the trial court abused its discretion in denying abatement of discovery regarding the severed Statutory Extra-contractual Claims. We agree.

*Contractual UIM Claims*

Uninsured/underinsured motorist cases differ from other insurance disputes because, unlike most first-party cases in which the terms of the policy alone dictate the outcome, UIM coverage hinges on the liability of the alleged uninsured/underinsured, at-fault third-party motorist under applicable tort law. *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006) (citing *Henson v. S. Farm Bur. Cas. Ins. Co.*, 17 S.W.3d 652, 653-54 (Tex. 2000)). Consequently, "the insurer's contractual obligation to pay benefits does not arise

4

until liability and damages are determined." *Id.*; *see also In re United Fire Lloyds*, 327 S.W.3d 250, 255 (Tex. App.—San Antonio 2010, orig. proceeding). "Neither requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay." *Brainard*, 216 S.W.3d at 818.

To recover benefits under a UIM policy, a policy beneficiary must show (1) that the insured has UIM coverage, (2) that the underinsured motorist negligently caused the accident that resulted in the covered damages, (3) the amount of the insured's damages, and (4) that the underinsured motorist's insurance coverage is deficient. *See In re Liberty Cty. Mut. Ins. Co.*, 537 S.W.3d 214, 220 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) (citing *Brainard,* 216 S.W.3d at 818). Accordingly, "a claim for UIM benefits is not presented until the trial court signs a judgment" resolving these issues. *Brainard*, 216 S.W.3d at 818.

In the underlying case, there has been no judgment or other judicial determination of Ortiz's liability or the amount of damages she caused. Absent such a judgment, Colonial has no contractual obligation to pay UIM benefits. Furthermore, as discussed below, Shelger cannot recover on extra-contractual claims arising from the failure to pay such benefits.

*Extra-contractual Claims*

"An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-

law and statutory duties." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018); *see also United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 672 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding) ("[A] breach of an insurance contract claim is separate and distinct from bad faith, Insurance Code or DTPA causes of action. Uninsured motorist claims and bad faith claims have been recognized as separate and distinct causes of action which might each constitute a complete lawsuit within itself.") (internal citations omitted).

An insured must first establish that the insurer is liable on the contract before the insured can recover on extra-contractual causes of action against an insurer for failing to pay or settle a UIM insurance claim. *See In re Liberty Cty. Mut. Ins. Co.*, 537 S.W.3d at 220.[3] Thus, our Court and others have required extra-contractual claims to be severed and abated until the UIM breach of contract claim is determined. *See In re Liberty Cty. Mut. Ins. Co.*, 537 S.W.3d at 220; *In re Allstate Cnty Mut. Ins.*

---

[3] *See also In re Progressive Cnty. Mut. Ins. Co.*, 439 S.W.3d 422, 426–27 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (stating that "extra-contractual liability could only accrue if [insurer] is found liable on the contract"); *In re Old Am. Cnty. Mut. Fire Ins. Co.*, No. 13–12–00700–CV, 2013 WL 398866, at *4 (Tex. App.—Corpus Christi Jan. 30, 2013, orig. proceeding) ("[T]o prevail on their extra-contractual claims against [insurer], plaintiffs must first demonstrate that [insurer] was contractually obligated to pay their uninsured motorist claim."); *In re State Farm Mut. Auto. Ins. Co.*, 395 S.W.3d 229, 238 (Tex. App.—El Paso 2012, orig. proceeding) (quoting *Smith v. Allstate Ins.*, No. H–03–0651, 2007 WL 677992, at *5 (S.D. Tex. Feb. 27, 2007)) ("Texas insurance law generally conditions recovery for bad faith and extracontractual claims on a recovery for breach of the insurance contract itself.").

*Co.*, 447 S.W.3d 497, 504; *In re Progressive*, 439 S.W.3d at 428. The rationale for requiring severance and abatement of these types of claims is that they may be rendered moot by a determination of underlying liability. *See U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 673 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding) ("Abatement of the bad faith claims must necessarily accompany severance of those claims from the contract claim. Without abatement, the parties will be put to the effort and expense of conducting discovery and preparing for trial of claims that may be disposed of in a previous trial."); *In re State Farm Mut. Auto. Ins. Co.*, 553 S.W.3d 557, 564–65 (Tex. App.—San Antonio 2018, orig. proceeding) ("[B]ecause extra-contractual claims in a UIM case can be rendered moot, abatement is necessary to avoid litigation expenses and conserve judicial resources."); *In re United Fire Lloyds*, 327 S.W.3d at 254 (holding that abatement of insured's extra-contractual claims was required to "do justice, avoid prejudice, and further convenience."); *Am. Nat'l Cnty.*, 384 S.W.3d at 439 (concluding that trial court abused its discretion in failing to abate extra-contractual claims until UIM contract claim was resolved).

*Independent Injury Claims*

In opposing abatement of her Insurance Code and DTPA claims, Shelger argued to the trial court that these statutory claims are not "extra-contractual" and that Colonial could be liable for them even absent coverage. Shelger's August 30,

2018 opposition brief filed with the trial court cites the Texas Supreme Court's opinion in *USAA Texas Lloyds Co. v. Menchaca*, No. 14-0721, 2017 WL 1311752 (April 7, 2017) for the proposition that an insured can recover on a statutory violation claim without any determination of the underlying coverage dispute. The opinion cited by Shelger had previously been withdrawn and susperseded by the Texas Supreme Court's opinion on rehearing issued on April 13, 2018. *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018). To the extent that the trial court relied on *Menchaca* in denying abatement of the Statutory Extra-contractual Claims, such reliance was misplaced.

At the outset, *Menchaca* is distinguishable because it did not involve a UIM claim or whether contractual and extra-contractual claims should be severed and abated. Instead, it involved a first-party claim by the insured against her insurer for storm damage to the insured's home. The question before the Court was "whether the insured can recover policy benefits based on the insurer's violation of the Texas Insurance Code even though the jury failed to find that the insurer failed to comply with its obligations under the policy." *Menchaca*, 545 S.W.3d at 484. In *Brainard*, the Court noted the unique nature of UIM claims and drew a distinction between first-party insurance contract claims and UIM contracts: "Unlike many first-party insurance contracts, in which the policy alone dictates coverage, UIM insurance utilizes tort law to determine coverage. Consequently, the insurer's contractual

8

obligation to pay benefits does not arise until liability and damages are determined." *Brainard*, 216 S.W.3d at 818.

But even assuming, arguendo, that *Menchaca* applies to UIM claims, the decision does not support the trial court's denying abatement of the Statutory Extra-contractual Claims. In its opinion on rehearing, the Court "clarif[ied] and affirm[ed] the general rule that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy." *Menchaca*, 545 S.W.3d at 495. The Court further explained that, regardless of whether an insured is entitled to benefits under a policy, this general rule does not preclude the possibility of an insured recovering damages for a statutory violation that causes an injury independent from the loss of the benefits:

> There are two aspects to this independent-injury rule. The first is that, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits . . . . The second . . . is that an insurer's statutory violation does not permit the insured to recover any damages *beyond* policy benefits unless the violation causes an injury that is independent from the loss of the benefits.

*Id*. at 499–500 (emphasis added). The violation must be "some act, so extreme, that [it] would cause injury independent of the policy claim." *Id.* at 499 (quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)).

This "independent-injury rule" applies only if damages are truly independent of the insured's right to receive policy benefits. *Id.* at 499-500. It does not apply if

9

the insured's statutory or extra-contractual claims "are predicated on [the loss] being covered under the insurance policy" or if the damages "flow" or "stem" from the denial of the claim for policy benefits. *Id.* at 500. When an insured seeks to recover damages that "are predicated on," "flow from," or "stem from" policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits. *Id.*

As the Court pointed out, in carving out the independent injury rule in *Stoker*, the Court was merely allowing for "the possibility" of such an injury and expected that it would be rare; indeed, so rare that the Court had never seen such an independent injury:

> [o]ur reference in *Stoker* to "the possibility" that a statutory violation could cause an independent injury suggested that a successful independent-injury claim would be rare, and we in fact have yet to encounter one . . . This is likely because the Insurance Code offers procedural protections against misconduct likely to lead to an improper denial of benefits and little else . . . We have further limited the natural range of injury by insisting that an injury is not "independent" from the insured's right to receive policy benefits if the injury "flows" or "stems" from the denial of that right.

*Id.* at 500.

Here, Shelger's petition contains no allegation that she has suffered damages unrelated to or independent of her contract claim for the denial of UIM benefits. Rather, Shelger's Statutory Extra-contractual Claims are predicated upon the denial of UIM benefits. For example, Shelger's First Amended Petition demonstrates that

10

her Statutory Extra-contractual Claims are based upon allegations that Colonial "failed to attempt to effectuate a prompt, fair and equitable settlement of a claim," "failed to adopt and implement reasonable standards for prompt investigation of claims arising under its policies," and "refused to pay a claim without conducting a reasonable investigation with respect to the claim." Accordingly, the general rule applies and Shelger cannot recover on her Statutory Extra-contractual Claims based on the denial of UIM benefits unless she first demonstrates that she has a right to those benefits under the policy.

As stated above, Colonial "is under no contractual duty to pay benefits until [plaintiff] obtains a judgment establishing the liability and underinsured status of the other motorist." *Brainard*, 216 S.W.3d at 818; *In re United Fire Lloyds*, 327 S.W.3d at 256. Here, liability for Shelger's UIM claim has not been judicially determined in her breach of contract case. Accordingly, the severed extra-contractual claims are not yet ripe and could be rendered moot by the underlying liability determination in the breach of contract case. The trial court was, therefore, required to abate the Statutory Extra-contractual Claims asserted against Colonial and abused its discretion by denying abatement of the claims.

### Adequate Remedy by Appeal

We further conclude that Colonial lacks an adequate remedy by appeal because if mandamus is not granted it stands to lose substantial rights by being

11

required to engage in discovery and prepare for claims that may be rendered moot and may have not even yet accrued.

Here, the discovery Shelger served on Colonial underscores the necessity of severance and abatement of all her extra-contractual causes of action. Among other things, Shelger has served Colonial with interrogatories, requests for production and requests for admissions aimed at her extra-contractual causes of action against Colonial. For example, Shelger seeks discovery of Colonial's investigation into her UIM claim, specific identifying and employment history of Colonial's UIM adjusters, a history of Colonial's UIM claim investigations and customer complaints, UIM claims handling training, UIM claims handling policies and procedures, underwriting materials, documents demonstrating Colonial satisfied its Texas Insurance Code duties and obligations in this case, and information regarding Colonial's net worth and reserves set aside for Shelger's UIM claim.

Insurers have a substantial right not to undergo the expense of litigating and conducting discovery on issues that ultimately may be unnecessary because of the result in the underlying tort case. *See In re Liberty Cty. Mut. Ins. Co*., 537 S.W.3d at 223; *see also In re Old Am. Cnty. Mut. Ins. Co.*, 2012 WL 506570 at *5. Accordingly, insurers lack an adequate remedy by appeal when they are required to litigate and engage in discovery regarding extra-contractual claims that may be rendered moot by the determination of the breach of contract claims. *See In re Liberty Cty. Mut.*

*Ins. Co.*, 537 S.W.3d at 223; *In re Allstate*, 447 S.W.3d at 504; *In re Progressive*, 439 S.W.3d at 427–28; *see also In re United Fire Lloyds*, 327 S.W.3d at 256 (concluding that insurer lacked adequate remedy by appeal because, if writ of mandamus was not granted, insurer stood to lose substantial rights by being required to prepare for claims that might be rendered moot and never even accrue). If mandamus is not granted, Colonial would be required to prepare for and respond to discovery concerning claims that similarly lack justiciability. *See In re Liberty Cty. Mut. Ins. Co.*, 537 S.W.3d at 223.

## Conclusion

For the forgoing reasons, we conditionally grant the petition for writ of mandamus and direct the trial court to (1) vacate the portion of its order denying abatement of the severed Statutory Extra-contractual Claims and (2) grant Colonial's request to abate the severed Statutory Extra-contractual Claims. We are confident that the trial court will promptly comply, and our writ will issue only if it does not. We dismiss any pending motions as moot.

## PER CURIAM

Panel consists of Justices Lloyd, Goodman, and Landau.